In re BRICE.

(District Court, S. D. Iowa, C. D. May 4, 1899.)

1. BANKRUPTCY—JURISDICTION—"PRINCIPAL PLACE OF BUSINESS."

Where a petitioner in voluntary bankruptcy resides in one district, and is there employed as clerk in a store, but is engaged in trade on his own account, as a general merchant, in another district, the court of bankruptcy in the latter district has jurisdiction of the petition, the bankrupt's principal place of business being within its territorial limits.

2. SAME—WHO MAY BECOME BANKRUPT—INFANTS.

Where the law of the state (Code Iowa 1897, § 3190) provides that a minor may not disaffirm his contracts on reaching full age when, "from his having engaged in business as an adult, the other party had good reason to believe him capable of contracting," if a minor engages in business as a merchant, and parties consequently assume that he is of full age, and deal with him in that belief, no inquiry or representation being made as to his minority, he becomes absolutely liable for the debts contracted in such business, and may be adjudged bankrupt on his own petition, though still an infant.

In Bankruptcy. On petition to vacate adjudication of bankruptcy.

Dudley & Coffin, for petitioning creditors.

W. S. Kenworthy, for bankrupt.

J. F. & W. R. Lacey and H. H. Sheriff, for opposing creditors.

WOOLSON, District Judge. Carl S. Brice having filed his petition in voluntary bankruptcy, the petition was regularly referred to George W. Seevers, Esq., as referee in bankruptcy. Upon April 3, 1899, said referee formally adjudicated said Brice to be a bankrupt, and duly gave notice for first meeting of creditors. Shortly prior to the day fixed for said first meeting, Wyman, Partridge & Co., claiming to be creditors of said Brice, presented to the judge of this court their petition, wherein they sought vacation of said adjudication. The grounds on which such vacation was sought were, in substance, that at date of such adjudication said Brice was "a minor, and under the age of twenty-one years, and not a 'person' within the intent of the bankruptcy statute, and therefore not entitled to the benefits of said statute"; that such fact was not disclosed by the petition filed by him, nor upon said adjudication. An amendment to such petition for vacation alleges as further ground that this court has not jurisdiction to entertain said Brice's petition, because said Brice, up to the filing of his petition, continuously had his domicile and residence and principal place of business within the Northern district of this state. To this petition for vacation of order of adjudication Brice files his answer, admitting that he is under 21 years of age, but averring that when he was 19 years old he was manumitted by his father, and that for more than 6 months before the filing of his said petition in bankruptcy, and at the date of such filing, he was openly engaged in business as a merchant in Mahaska county, in this district.

Counsel for said Brice, for said petitioning creditors, as well as for other creditors, have been heard orally and by briefs. Upon the hearing, said Brice was examined under oath. The following facts appear: In January, 1898, the father of said Brice executed an instru-

ment, which follows the general form and contains the substance of what is generally accepted as a manumission paper. It was conceded on the hearing that such paper is amply sufficient, as between father and son, to accomplish the purpose for which it was intended. This paper was published in one of the principal newspapers where the father and son resided. Since said date of manumission, and up to the filing of his petition herein, said C. S. Brice was employed in his father's store in Tama county, Iowa, as a clerk, upon a monthly salary. Said Brice also opened up, in Oskaloosa, Mahaska county, Iowa, a store, for general merchandise purposes, and had maintained the same for over six months prior to filing of his said bankruptcy petition. He was very seldom at his Oskaloosa store, and in fact took no leading part in the management or details of business therein. His brother-in-law, one Barber, was in charge as manager, made the purchases of goods, made whatever payments thereon were made, engaged those employed in said store, and attended to obtaining the lease of the store premises; but the lease was taken in the name of said Brice, and all purchases were also made in said Brice's name. There is presented herein no claim that any fraud was perpetrated or attempted in the matters named. All the creditors dealt with said store as being the property of said Brice. The debts scheduled in the petition for bankruptcy aggregate $24,-608.10. The stock of goods are scheduled at an aggregate of $12,350.

First, as to jurisdiction: Without determining, but assuming, that this point is here properly presented, I find the facts proven sustain such jurisdiction in this court. Although Brice unquestionably had his domicile and residence without this district, yet his business without the district was that of a mere clerk; within this district, and for the entire period of six months prior to filing his petition, he was carrying on the business of a merchant upon such a scale as that his scheduled debts for merchandise and store expenses aggregated at filing of petition over $20,000. Whether he might have filed his petition in the district of his residence is not the question here to be decided. The statute (30 Stat. 545, c. 541, § 2, par. 1) confers upon this court, as a court of bankruptcy, jurisdiction "to adjudge persons bankrupt who have had their principal place of business, resided, or had their domicile within its territorial jurisdiction for the preceding six months, or the greater portion thereof." Brice has elected to file his petition in bankruptcy in the district of his principal place of business. If he is a "person" within the meaning of the statute, this court has jurisdiction. I do not deem it necessary to here determine the question presented by counsel for Brice that the plea of minority is a plea personal to the bankrupt in this proceeding, but will assume, for the purpose of this hearing, that a creditor may properly present it. Section 4, par. b, of the present bankruptcy statute provides that "any person, except a corporation, shall be entitled to the benefits of this act as a voluntary bankrupt." By section 1, cl. 19, it is provided that the word "persons" "shall include corporations, except where otherwise provided, and officers, partnerships, and women." No part of this statute appears expressly to provide for the case of minors. In re Derby, 8 Ben. 118, Fed. Cas. No. 3,815,

is cited by counsel for creditors petitioning for vacation as a well-considered case, wherein Judge Blatchford (then district judge, but subsequently an associate justice of the supreme court of the United States) decided that minors, in respect to their general contracts, are not embraced within the provisions of the bankruptcy act of 1867, as subjects of voluntary or involuntary bankruptcy. Opposing counsel have cited In re Book, 3 McLean, 317, Fed. Cas. No. 1,637, wherein it is decided, in answer to the question "whether the infancy of the applicant is good ground for opposition to his discharge as a bankrupt," that "an infant may claim the benefit of the bankrupt law." This last-cited case, while given as the "opinion of the court" on questions certified to the circuit court from the district court, under the provisions of the bankrupt act of 1841, appears to have been answered on general principles, and not upon any special provisions of that act, and to be the opinion of Justice McLean, then a member of the supreme court of the United States. In neither of these cases, apparently so contrary in decision reached, is there reference as a controlling factor to any special provision of the acts in force at dates of such decisions. Yet there are apparent principles in common recognized as underlying these decisions. In the course of the opinion Judge Blatchford states, apparently as the reason leading to the conclusion reached by him:

"The general contracts of an infant having no force if disaffirmed by him after attaining his majority, it is idle for him to set forth, in a voluntary case, a schedule of his creditors, and idle for them to prove their debts during his infancy, for the whole proceedings must be in vain if the debts are disaffirmed by him after he attains his majority."

Towards the close of his opinion he states:

"It is not intended to express an opinion as to whether or not an infant may not voluntarily petition in respect of contracts for which he is liable, such as debts for the value of necessaries."

While Justice McLean states:

"An infant is bound to pay certain debts. The bankrupt law extends its benefits to all persons who are in a state of bankruptcy, without exception as to persons. Fiduciary debtors only are excepted. * * * When an infant brings his case within the bankrupt law, the law vests his property in the assignee."

Apparently, therefore, if the infant is liable for the debts he schedules, he may, so far as the decisions above cited have expressly decided, avail himself of the benefits of the bankrupt law, in the absence in such law of any provisions to the contrary. And the point decided in Re Derby must be regarded as applying adversely to the right of minors to be adjudged bankrupts only as to debts which the minor had the legal right to disaffirm. The industry of counsel has brought to the court only these two decisions as directly bearing on the question here presented. The contention presented in the pending matter may be regarded as closely analogous to the question presented under former bankruptcy statutes with reference to whether, and, if at all, to what extent, such former statutes extended their provisions to married women. The cases are numerous wherein the courts were called to determine how far the recognized legal disabilities of married women affected the application of the statute. In the pending

matter the legal disability is alleged as applying to a minor. Without attempting an exhaustive consideration of the decisions relating to the application of former bankruptcy laws to married women, a few may profitably be here considered. In Re Slichter, Fed. Cas. No. 12,943, Judge Nelson, in 1869, passed directly on the question, arising in the district of Minnesota, over which this distinguished judge so long presided, as to the status of a married woman under the act of 1867. Catharine Slichter and her son had been trading under the firm name of Slichter & Son. This decision recognizes that the statutes of that state had relieved married women of many of the disabilities to which they were theretofore subjected, but that Mrs. Slichter could make no contract, in the course and business of said firm, except as authorized by the laws of that state. "There being no evidence that Mrs. Slichter was engaged in business by virtue of any authority conferred by the statute, she could avail herself of her coverture to defeat the debt which was the basis of the bankruptcy proceedings."

In re Kinkead, 3 Biss. 405, Fed. Cas. No. 7,824, was decided in 1873 by Judge Blodgett. This decision with exhaustive clearness applies the statutes of Illinois regarding the legal status of married women as to property rights. J. D. Kinkead and his wife, under the firm name of Kinkead & Co., were carrying on a partnership business as traders. Kinkead & Co. and J. D. Kinkead, by proceedings in involuntary bankruptcy, had been adjudicated bankrupts. An individual creditor of J. D. Kinkead sought to have his debt established against the firm assets, on the ground that the contract of co-partnership was void and inoperative by reason of the inability of the wife to make a binding contract. After a full and clear statement of the statute of the state relating to the questions involved, Judge Blodgett, in closing his opinion, states:

"The fact that Mrs. Kinkead was not individually adjudged a bankrupt does not, in my view, change the aspect of the case. Such an adjudication could only be necessary for the purpose of reaching her individual property, if she has any, which is not alleged; and she may yet be so adjudged if it becomes necessary in the course of these proceedings."

The decision reached above was subsequently affirmed by Circuit Judge Drummond (1874), before whom the case was taken on review.

In re Collins, 3 Biss. 415, Fed. Cas. No. 3,006, was decided in 1873 by the same distinguished jurist. In this case was directly presented the question whether a married woman was entitled, on her own petition, to receive the benefits of the bankruptcy statute. The case arose upon the motion of a creditor to set aside and dismiss the bankruptcy proceedings after adjudication had thereon. After referring to the discussion had in the Kinkead Case, supra, Judge Blodgett says:

"I think the principles I have laid down in the Kinkead Case that a married woman could lawfully engage in business, and incur liabilities, justify her in coming to this court, and the court in taking jurisdiction of the case."

In re Goodman, 5 Biss. 401, Fed. Cas. No. 5,540, was decided by Judge Gresham in 1873, while district judge of the district of Indiana. Petition was filed against Rachel Goodman, a married woman, alleg-

ing that she had, in that district, been for years engaged in business in her own name as a trader, and had committed an act of bankruptcy (describing it) within the last six months, etc. The case came up on a motion of Mrs. Goodman to dismiss the bankruptcy proceedings. In his decision Judge Gresham states:

"Whether this proceeding can be maintained depends upon how far the legislature of Indiana has gone in changing the common-law rights of married women."

After discussing and summarizing the Indiana statutes, the opinion concludes:

"The rule, then, still being that a married woman cannot contract, and the power to do so being an exception to the rule, and the petition failing to show that Mrs. Goodman was possessed of any separate property or means with which she was carrying on her business, it follows that she cannot be adjudged a bankrupt. The petition is therefore dismissed."

An extended annotation to the case of In re Kinkead, 14 Fed. Cas. p. 602, closes with what appears to be a correct conclusion based on the cases above cited and others cited in such annotation:

"Impossible as it may be to reconcile the decisions on the general question of the rights and liabilities of married women, the duty of the federal courts in administering the bankrupt act would seem to be simply to determine the status of a married woman under the existing laws of the state where the jurisdiction is to be exercised, and administer the act upon the basis of the principles thus discovered. The foundation of bankruptcy proceedings is indebtedness; but the bankruptcy act does not make any new standard of liability; it simply operates upon those already existing. The application of the act to married women depends, clearly, not upon their rights, but their liabilities; and those liabilities are determined by the law of the forum where the jurisdiction is invoked."

While not directly applicable herein, an interesting case is In re Cotton, Fed. Cas. No. 3,269, wherein Judge Judson, of the district of Connecticut, applies the bankruptcy statute, as in force in 1843, to the state statutes of that state, and makes such application the decisive test whereunder he dismisses the application upon voluntary petition.

No good reason appears to me why the test above laid down may not be applied in determining to what extent, if at all, the present bankruptcy statute extends its benefits to minors. Throughout each of the cases above cited runs the query, is the person seeking or sought to be adjudged a bankrupt liable for his contracts, or for what is commonly understood to be his debts? Wherever this question is answered in the affirmative, the decision applies the bankruptcy statute, while, if answered in the negative, the application of the bankruptcy statute is denied. Turning, then, to the statutes of Iowa, we find the rights and liabilities of minors, so far as affected in the pending matter, as defined by the Iowa Code of 1897, as follows:

"Sec. 3188. The period of minority extends in males to the age of twenty-one years, and in females to that of eighteen years; but all minors attain their majority by marriage.

"Sec. 3189. A minor is bound not only by contracts for necessaries, but also by his other contracts, unless he disaffirms them within a reasonable time after he attains his majority, and restores to the other party all money or property received by him by virtue of the contract, and remaining within his

control at any time after his attaining his majority, except as otherwise provided.

"Sec. 3190. No contract can be thus disaffirmed where, on account of the minor's own misrepresentations as to his majority, or from his having engaged in business as an adult, the other party had good reason to believe him capable of contracting."

How far, if at all, the matter pending is affected by manumission by the father, will not now be considered; that question not being deemed necessary to the decision reached herein. The alleged bankrupt was submitted to examination under oath on the hearing, and his testimony is before the court, together with the documentary evidence presented. His minority is conceded. There appear no express misrepresentations by him as to his minority. The petitioning creditors made no inquiry touching this point. No question appears to have arisen in their minds as to his being of age. They dealt with him as one of full age. He was engaged in business as an adult. From his having thus been engaged, the evidence clearly shows that these creditors had good reason to believe, and did believe, Brice was capable of contracting. There is thus met every requirement, essential under the Iowa Code, to place the debts or claims held by these creditors beyond the power of Brice to disaffirm, when he shall, in the coming December, have reached the age of 21. He cannot now or then, under the Iowa statutes, disaffirm these debts; and thus he is liable therefor, as though at time of his contracting them he had attained his majority. This conclusion satisfies the reasons underlying the above-cited cases as to married women, and it is not antagonistic to either of the cases cited as to minors, as above interpreted, and it appears just to all concerned in the results reached under it.

It becomes unnecessary formally to consider the fact, appearing on the hearing, that the petitioning creditors herein had instituted, and are now maintaining, in the state court, action as for debt against said Brice on the same claims which they set up in their petition herein as giving them the right to a vacation of the adjudication of bankruptcy. Such action in the state court is aided by attachment against the stock of merchandise, which, if the adjudication be sustained, will pass to the trustee. That such action, if prosecuted to judgment, must result in recovery for such creditors against Brice, is beyond question, under the evidence before me. The result would then be, if the petition of such creditors be sustained, and bankruptcy proceedings dismissed, that for the very debts, on account of which, in these bankruptcy proceedings, such creditors claim Brice cannot maintain these proceedings because he is not liable therefor, they would, in their action in the state court, recover judgment, because Brice is, under the Iowa statute, powerless to disaffirm, and, consequently, liable therefor. In such case the writ of attachment issued at their instance would result in paying their claim in full, to the disadvantage of other creditors, who are content to accept that equality of distribution of assets whose accomplishment is the primary object of the bankruptcy statute.

Having reached the conclusion above announced, it follows that the petition of Partridge, Wyman & Co., for vacation of order of adjudication of said Carl S. Brice as a bankrupt must be denied and dismissed, and at their costs.