## In re WHITE MOUNTAIN PAPER CO.

(District Court, D. New Hampshire. October 13, 1903.)

No. 826.

1. BANKRUPTCY—MANUFACTURING CORPORATIONS—COMMENCEMENT OF BUSINESS.

Under Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418], providing that any corporation engaged principally in manufacturing or mercantile pursuits may be declared a bankrupt, a corporation organized for the purpose of manufacturing paper from wood pulp, which had purchased woodland and other property for the commencement of its business, was subject to bankruptcy proceedings within the statute, though it had never in fact started its factory.

2. SAME—DISSOLUTION OF CORPORATION.

Where, after involuntary bankruptcy proceedings had been begun against a corporation, a decree was entered in another state dissolving the corporation, such decree did not affect the bankruptcy proceedings.

Alexander & Green, for alleged bankrupt.

Sargent, Niles & Morrill and E. N. Goding, for petitioning creditors.

ALDRICH, District Judge. The question whether the present bankruptcy law operates upon this corporation under the circumstances disclosed by the master's report is in its nature a jurisdictional

¶ 1. What persons are subject to bankruptcy law, see note to Mattoon Nat. Bank v. First Nat. Bank, 42 C. C. A. 4.

question, and may be taken at once to an appellate court, where the question can be authoritatively determined. The question is new, and, however I decide it, the party against whom the decision is rendered will doubtless at once take the question there. It is best, therefore, I think, in view of the magnitude of the interests and the imperative importance of an early, final determination of the question whether the bankruptcy court has jurisdiction, that I should not delay the ultimate result by holding the case for exhaustive examination, but decide the question at once upon my impressions, to the end that the desired result may be reached at the earliest possible moment.

It seems to me, upon first impression, that the question whether the corporation was one within the meaning of the bankruptcy law does not depend upon the fact as to whether the corporation was, at the particular time of the petition, actually engaged in turning machinery in the actual process of manufacturing. My impression would be that the language "engaged principally in manufacturing * * * pursuits" was used for the purpose of describing the kind of a corporation which may be put into bankruptcy, and that it was not intended that the operation of the bankruptcy law upon a corporation of a kind within the meaning of the statute should depend upon the question whether it was actually engaged in manufacturing at the particular time when the petition is filed. It seems to be well enough established that a suspended concern which has been engaged in manufacturing, or trading, or mercantile pursuits, is subject to the bankruptcy law, and this view is not sustained because the concerns were actually engaged in such pursuits, but because the concerns were principally engaged in a pursuit of a kind within the statute. In other words, the authorities relate to the character of the pursuit, rather than to the question whether the statutory pursuit had been developed to a stage necessary to make the law operative.

Neither party has called my attention to any authority (and it is said there are none) upon the point in question, viz., whether a corporation organized for the purpose of engaging principally in manufacturing, as was the case here, and which becomes insolvent while prosecuting the enterprise in its formative stages and before its machinery has actually engaged itself in producing a manufactured product, is subject to involuntary bankruptcy. The authorities presented by those who oppose the bankruptcy proceeding relate chiefly to the question whether the pursuit actually engaged in in the given case was principally manufacturing, trading, or mercantile, and the view seems to be generally accepted that the operations when under way must relate principally to the kind of business described by the statute; but such authorities, as it seems to me, do not come to the precise question involved here, and it is for this reason that the point was not taken in any of the cases called to my attention that the corporation in question, though organized for and in pursuit of a business within the terms of the statute, had not reached the stage of actually engaging in the process of changing an unmanufactured product into a manufactured product, and therefore that the corporation was not subject to the operation of the bankruptcy law.

In this case it is found by the master, and it is in fact conceded,

"that the corporation was in fact organized for the purpose of the manufacture and sale of paper made from wood pulp." It is also found that in pursuance of this purpose the corporation had acquired something like 400,000 acres of timber land from which mills were to be supplied with wood to be manufactured into pulp and paper, and that it had cut from its lands considerable quantities of timber into four foot lengths, known as "pulp wood lengths," and had floated the same in the Saco river towards its mills, some of which were nearly completed at the time of the petition; that it had provided itself with material and equipments and had commenced the construction of pipe lines for the purpose of bringing water from Berwick, Me., a distance of some 10 miles; that the trench had been excavated and the pipe distributed for a distance of three miles; and that various expenditures, which need not be specifically enumerated, had been made in the prosecution of the general plan of prosecuting a manufacturing business as its principal business, but it is conceded that no wood had been ground into pulp or manufactured into paper.

In my hasty examination of the question, I have queried whether counsel have not, in discussing this question, lost sight of the significance of the word "pursuits," as used in the statute. The statute is, "any corporation engaged principally in manufacturing, trading, printing, publishing, mining or mercantile pursuits." Now, the question, perhaps, is whether the statute applies itself only to corporations actually engaged in the process of manufacturing, or whether it applies itself to corporations engaged in manufacturing pursuits. Was it intended by Congress that a corporation organized for the purpose of engaging in a business of a kind within the provisions of the bankruptcy law, and creating indebtedness while in the line of a statutory pursuit, should not be subject to its provisions until it had actually set its saws or its crushers in motion for a few minutes, and then that the law should operate upon all indebtedness, including that created in the formative period of the enterprise; or, on the other hand, was it intended by Congress to enlarge the limited meaning under strict and narrow construction of the words "engaged in manufacturing" by connecting them with the word "pursuits," to the end that a corporation, pursuing through its formative stages a business of the kind described by the statute, should be subject to the operation of the bankruptcy law, though not having actually engaged in turning the machinery which produces the contemplated manufactured product? I hesitate to adopt the former view. It does not seem, upon first impression, to be reasonable. I do not deal with what is known as the "Kennett Phase" of the situation, because it seems to me that that is rather an incident of the principal business, and therefore would not render the corporation subject to bankruptcy if the construction of the statute for which the corporation contends is sustained. The report of the master, however, on that phase of the case, is made a part of the record, and, so far as the facts are concerned, I find them to be as reported by the master.

A further question relates to a proceeding in New Jersey in the state courts under a state statute to dissolve a corporation. It appears that the order in New Jersey dissolving the corporation was

subsequent to the proceeding in bankruptcy here, and, viewing the bankruptcy law as paramount, it does not seem to me that that proceeding should be accepted as defeating the bankruptcy proceeding, provided the jurisdiction of the federal court was properly invoked in respect to the corporation in question. And the question whether jurisdiction was properly invoked depends upon the jurisdictional question about which I have stated my impression.

There being no question as to insolvency, I shall adjudge the corporation bankrupt, but, having decided the question speedily upon first impression for the purpose of advancing it without delay to the appellate court, I shall suspend all further orders in this case, except such as are necessary to preserve property, provided the aggrieved party promptly goes forward until the jurisdictional question is authoritatively determined.