WHITE MOUNTAIN PAPER CO. v. MORSE & CO. et al.

(Circuit Court of Appeals, First Circuit. January 21, 1904.)

No. 509.

1. BANKRUPTCY—CORPORATIONS—EFFECT OF FORMAL DISSOLUTION.

A corporation of New Jersey may be adjudged a bankrupt, although a decree of dissolution has been entered by a court of the state in proceedings against it; the state statute (Laws 1896, p. 295, c. 185, § 53) providing that corporations, when dissolved, shall be continued bodies corporate for the purpose of suing and being sued, and of settling up their affairs and conveying their property.

2. SAME—PRINCIPAL BUSINESS OF CORPORATION—MANUFACTURING CORPORATION.

A corporation organized for the purpose of manufacturing and dealing in paper and pulp, which had bought large tracts of timber land, and expended some $500,000 in the erection and equipment of buildings for paper and pulp mills, and which had hired cut several thousand cords of wood in lengths suitable for use in the manufacture of paper, was engaged in manufacturing, within the meaning of Bankr. Act July 1, 1898, c. 541, § 4b, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423], and subject to proceedings in involuntary bankruptcy, although it had never operated its mills, nor completed the manufacture of either paper or pulp, where it had engaged in no other business.

Appeal from the District Court of the United States for the District of New Hampshire.

For former opinion, see 127 Fed. 180.

Allan McCulloh (Page & Bartlett, on the brief), for appellant.

Edward C. Niles and William R. Sears (Edward N. Goding and Sargent, Niles & Morrill, on the brief), for appellees.

Before COLT and PUTNAM, Circuit Judges, and BROWN, District Judge.

PUTNAM, Circuit Judge. This is an appeal from the District Court for the district of New Hampshire, under section 25a of the bankruptcy statute approved on July 1, 1898 (30 Stat. 553, c. 541 [U. S. Comp. St. 1901, p. 3432]), from a decree adjudging the appellant, the White Mountain Paper Company, bankrupt on an involuntary petition against it. 127 Fed. 180. The corporation exists by virtue of and under the statutes of the state of New Jersey, and, according to the settled rule of the Supreme Court, it has its legal domicile in that state. Therefore the question at once naturally presents itself whether the District Court for the district of New Hampshire had jurisdiction

---

¶ 2. What persons are subject to bankruptcy law, see note to Mattoon Nat. Bank v. First Nat. Bank, 42 C. C. A. 4.

to proceed against it to the extent of adjudicating it bankrupt. Of course, the settled rule, as last reasserted in Continental National Bank v. Buford, 191 U. S. 119, 120, 24 Sup. Ct. 54, 48 L. Ed. ——, is to the effect that, on either error or appeal, the first and fundamental questions are as to the jurisdiction first of this court, and then of the court from which the record comes, and that these must be raised by the court of its own motion if not raised by the parties. The determination; however, how far courts other than those of the domicile of the corporation against which proceedings of a general administrative character are taken, can, by its consent, accept jurisdiction thereof, is involved in some difficulty. In the present case the parties have expressly waived all questions of jurisdiction, and we have several times said that we will not consider such questions of our own motion, and without the assistance of counsel, when they are of obscure character. Moreover, no point being made as to the fact that the "principal place of business of the corporation" is in New Hampshire, the District Court probably had jurisdiction under section 2 (1) of the act of July 1, 1898 (30 Stat. 545, c. 541 [U. S. Comp. St. 1901, p. 3420]). Therefore we lay this topic aside.

The appellant corporation, according to its certificate of organization, has very broad powers. The objects for which it was organized include, among other things, "the manufacturing, buying, selling and dealing in all kinds of paper, pulp and other fibres and substances." The petition in this case sets out various acts of bankruptcy, which we need not particularly consider. Conforming to the phraseology of section 4b of the act of July 1, 1898 (30 Stat. 547, c. 541 [U. S. Comp. St. 1901, p. 3423]), it alleges that the corporation was, at the time of the filing of the petition, "engaged principally in manufacturing, trading and mercantile pursuits." We need give no consideration to this allegation, so far as it concerns the words "trading" and "mercantile." After the petition was filed, but before the adjudication, there was a decree by a chancery court of New Jersey, having jurisdiction with reference thereto, dissolving the corporation according to the statutes of that state. The substantial grounds of the appeal are, first, that the corporation was never "engaged principally in manufacturing," but had only taken incipient steps thereto; and, second, that, having been dissolved in the state of its domicile, it no longer existed, so that no judgment, including one in bankruptcy, could be rendered against it. The assignment of errors was as follows:

"First. The court erred in adjudicating the White Mountain Paper Company a bankrupt, because the said company was not at the time of the filing of the original petition in bankruptcy, or at the time of the filing of the amendments thereto, and is not now, a corporation engaged principally in manufacturing, trading, printing, publishing, mining, or mercantile pursuits.

"Second. The court erred in adjudicating the White Mountain Paper Company a bankrupt, because heretofore, and on the 3d day of July, 1903, a bill of complaint was duly filed in the Court of Chancery of New Jersey in a certain suit therein commenced between William H. Ford, complainant, and the White Mountain Paper Company, defendant, which said court was a court of competent jurisdiction to hear and determine all of the matters involved in said suit, and the said court thereupon acquired and now has jurisdiction of the parties to said cause, as well as the subject-matter thereof. That thereupon, on the said 3d day of July, 1903, the said court duly made an order, wherein

and whereby Frank P. McDermott was appointed receiver of all the assets and. effects of said White Mountain Paper Company. That thereafter such proceedings were duly had in said cause in said Court of Chancery that on the 25th day of August, 1903, in accordance with the statute in such case made and provided, an order was duly made in said cause whereby it was ordered,. adjudged, and decreed that said bill of complaint be taken as confessed against the defendant therein named, to wit, the said White Mountain Paper Company; and it was further ordered, adjudged, and decreed that the said White Mountain Paper Company should be dissolved, and its charter be forfeited and void, unless cause to the contrary should be shown on Monday, August 31, 1903, as in said order provided. That said White Mountain Paper Company was a corporation organized under and by virtue of the laws of the state of New Jersey, and subject thereto, and, by virtue of said order, such corporation is now dissolved.

"Third. The court erred in adjudicating the White Mountain Paper Company a bankrupt, because it appears from the evidence that the said company is not amenable to the provisions of the bankruptcy act."

So far as we are advised, the third error assigned is only a general statement of the first and second, and is not intended to go beyond them. The second would involve a serious question if the dissolution of the corporation by the decree of the Court of Chancery of New Jersey was in fact a true dissolution, so that the corporation, in truth and in law, ceased to have any existence whatever. But, following the ordinary practice in nearly all, if not all, the states, the Legislature of New Jersey provided that a decree of dissolution should be, to a certain extent, only nisi, so that a corporation does not immediately on such a decree cease to live, but retains for a specified period a qualified existence. Even if, under such legislation, from the time of the nominal dissolution, no judgment could be rendered against the corporation according to the statutes of the state of its domicile, foreign tribunals, including federal courts and state courts, in exercising their appropriate jurisdictions, permit the corporation meanwhile to sue and be sued in its own name, and judgments to be entered for and against it accordingly. Pomeroy's Lessee v. State Bank, 1 Wall. 23, 17 L. Ed. 500; Taylor v. Bowker, 111 U. S. 110, 116, 4 Sup. Ct. 397, 28 L. Ed. 368. A convenient collection of instances of this kind is to be found in Cook on Corporations (5th Ed.) 1447, 1448. Section 53 of chapter 185, p. 295, Laws of 1896 of the state of New Jersey, in reference to this topic, provides as follows:

"All corporations, whether they expire by their own limitation or be annulled by the Legislature or otherwise dissolved, shall be continued bodies corporate for the purpose of prosecuting and defending suits by or against them, and of enabling them to settle and close their affairs, to dispose of and convey their property and to divide their capital, but not for the purpose of continuing the business for which they were established." Dill on Corporations of New Jersey [4th Ed.] 95.

It is conceded that the appellant corporation, pursuant to its charter authorizing it to manufacture pulp and paper, had expended a very large amount of money—exceeding, perhaps, $500,000—in acquiring lands and erecting buildings necessary and suitable therefor, and intended to be used for that purpose, and for no other. Nevertheless it says that, inasmuch as it had not commenced in its mills the production of either pulp or paper, or of any other article named in its charter, it was not, at the time the petition was filed against it, "engaged" at all in manufac-

turing, in the statutory sense of the word. In substance, therefore, the appellant limits the word "manufacturing" to the final production or process of production of merchantable articles. A sufficiently extended statement of the facts bearing on this proposition is found in the following extract from the report of a master appointed by the District Court in the pending litigation:

"I find that in pursuance of this object the company secured a tract of timber land, of some 400,000 acres in extent, situated in New Hampshire and Maine, from which it was designed to obtain wood to be used in the manufacture of pulp and paper. It also commenced the erection of a mill for the manufacture of pulp and paper in Portsmouth, New Hampshire, which was to consist of eight buildings, five of which had been nearly completed prior to July 1, 1903. It also commenced the construction of a pipe line between Portsmouth and South Berwick, Maine, for the purpose of bringing water to its Portsmouth mills, to be there used in the process of the manufacture of pulp. In the construction of this pipe line, which was to be ten miles long, the trench was excavated, and the pipe distributed, for a distance of about three miles, along the trench, but none of the pipe was put in. The plant at Portsmouth represents an expenditure of about $500,000, exclusive of materials which have been purchased and paid for by the company, and which are now on the ground, but have not been put into the plant. The company also designed to erect six other mills at various points on the Saco river for the manufacture of pulp and paper. It also acquired water rights in fourteen places in New Hampshire and Maine, and did something in the way of developing the same.

"I find that it was the purpose of the company to organize a separate corporation for the management of the pipe line from Portsmouth to South Berwick.

"In the winter of 1902–03 the company let contracts for the cutting of wood on lands owned or controlled by them in Albany, New Hampshire, and some eight thousand cords were cut that winter by their contractors, a part of which were sawed up into four-foot lengths, suitable for use in the manufacture of pulp, and with the design of so using it in the company's mills proposed to be built or in process of erection. About sixteen hundred cords in four-foot lengths were floated down the Saco river some fifty or sixty miles in March, 1903, and are now in the river. The remainder—a part in four-foot lengths, and a part in other lengths—is on the bank of the river at Albany. It was designed to use that portion not sawed into pulp wood in the construction of mills proposed to be erected by the company, or to sell it as lumber.

"No pulp or paper has ever been manufactured or sold, nor have any contracts for the sale thereof ever been made, by the company, nor has it ever had any mill completed and equipped to such an extent that pulp or paper could be manufactured therein."

Statutes of this general class are not construed in a literal or narrow way, but, like customs legislation, they are held as addressing themselves to the general purpose for which they were enacted. This, in this case, is of a commercial, business character. Therefore, clearly, the expressions of the statute under consideration are to be looked at from that point of view. Whether or not one has become engaged in a particular business would, of course, be differently determined under various statutes in accordance with the context and the peculiar object of each. For example, one could hardly be said to be engaged in any business requiring the taking out of a special license under the internal revenue laws of the United States until he was fully equipped therefor. Also one could not be held to be engaged in an illegal liquor traffic, so as to render himself subject to criminal proceedings, until he had actually commenced sales, except where there are some express statutory pro-

visions applying to earlier stages of the undertaking. But the question here is whether, under this particular statute, this corporation had become "engaged principally in manufacturing," as that expression commends itself to the common understanding of those elements in the community to which statutes in bankruptcy are addressed.

No question arises here as to the word "principally." If the corporation was engaged in manufacturing, it must be said to have been engaged principally in it, because it was engaged in nothing else. The whole undertaking must be looked at together, taking into consideration all the facts stated by the master, and not dismembering them with the view of maintaining that this or that particular transaction did not severally answer the language of the statute. Looking at them all together, it is difficult to see how it can be said that the actual getting out of the four-foot lengths of timber suitable for use in the manufacture of pulp, with a design of so using them, was not, in every possible view of the expressions involved, manufacturing, although in its earlier stages. But even this is a narrow aspect, to which we are not limited. The corporation is a business corporation. It undertook to acquire lands and construct mills for a certain purpose, and that purpose must be presumed to be one within the four corners of its organization. It had undertaken a business, and, in view of its charter and of what facts we have stated, that business could be no other than the business of manufacturing. It was not organized for the purpose of constructing mills, so that it cannot be said that its business was that of constructing mills. It was permitted to construct mills only as incidental to its authorized powers which, so far as this case is concerned, were those of manufacturing. The question being purely a question of fact, and the case addressing itself on that question so strongly to the ordinary mind, it is hardly worth while to pursue it further, so that we are bound to hold that, on any fair construction of the statute, and in every application of the facts as applied thereto, the corporation was not only principally, but wholly, engaged in manufacturing, although in the early stages of it. To do otherwise would be equivalent to holding that one who had taken his whole capital, and employed it loading ships in foreign ports with cargoes destined for his home, had engaged proper stores for warehousing and selling the goods when they arrived, had employed clerks and provided all the incidentals of the business, had abandoned all other enterprises in favor of his purpose to continue indefinitely in the purchasing of goods abroad, bringing them home, and there disposing of them, was not principally engaged in importing while the merchandise was afloat, because, according to the construction of the customs statutes, articles purchased abroad are not imports until they have arrived within the domestic harbors for which they are intended.

The appellant has cited to us several decisions, none of which are of authority to bind us on this proposition, and none come to the case in hand, except an expression found in the opinion of the judge of the District Court for the Southern District of New York in Re New York & W. Water Co. (D. C.) 98 Fed. 711, 713. There the opinion, referring to the words "engaged principally in trading or mercantile pursuits," says:

. · "These words must be interpreted in the sense in which they are commonly used and received, and not in any strained or unnatural sense, for the purpose of including or excluding particular corporations."

It seems to us that this harmonizes with the views which we have expressed, and that the appellant, in the narrow path which it has selected, runs counter to it. We may well further state that the circumstances of the proceeding before us, as applied to the statute we are considering, are so very peculiar that no precedent cited fits properly into it, or can be expected to do so.

The views we take of this proceeding resolve it mainly into questions of fact, so that, while we are inclined to agree with certain views of the law stated in the opinion of the learned judge who disposed of the case in the District Court, and not gone over in this opinion, we are not required to positively assent to them or dissent from them, and we reserve them for future consideration if it becomes necessary in any other case to determine them.

The decree of the District Court is affirmed, and the appellees recover their costs of appeal.