## TIFFANY v. LA PLUME CONDENSED MILK CO.

(District Court, M. D. Pennsylvania. October 20, 1905.)

No. 589.

1. BANKRUPTCY—CORPORATION—PRINCIPAL PLACE OF BUSINESS.

Where a manufacturing corporation, although maintaining a nominal office in the state in which it is organized, has its manufactory and an office from which it conducts its business within a district in another state, its principal place of business is in the latter district, within the meaning of Bankr. Act July 1, 1898, c. 541, § 2 (1), 30 Stat. 545 [U. S. Comp. St. 1901, p. 3420], and it is subject to adjudication as a bankrupt therein, although it has ceased manufacturing and is engaged in liquidating its affairs from such principal office.

2. SAME—NATURE OF BUSINESS—EFFECT OF GOING INTO LIQUIDATION.

The liability of a person, whether natural or artificial, to bankruptcy, is to be judged by the character of the pursuit in which such person was engaged at the time the debts due the petitioning creditor were incurred, where he has since changed from an nonexempt to an exempt pursuit. As to such debts, an individual does not lose his previous character by ceasing to carry on the business in which they were contracted and turning to another in which he is not liable to bankruptcy; and neither does a corporation, by stopping business altogether and going into liquidation, voluntary or involuntary.

[Ed. Note.—What persons are subject to bankruptcy laws, see note to Mattoon Nat. Bank v. First Nat. Bank, 42 C. C. A. 4.]

3. SAME—JURISDICTION—CEASING TO DO BUSINESS FOR GREATER PART OF SIX MONTHS NEXT PRECEDING FILING OF PETITION.

A person who contracts debts while engaged in a business which makes him liable to bankruptcy is not to be heard to say that he is not so engaged, even though he has in fact ceased to be so, so long as his debts remain unpaid. Hence, where a corporation conducted a milk-condensing business up to October 6, 1904, when its plant was burned, and thereafter

did nothing except to gather in its assets and settle up its affairs, retaining a central office within its district for the purpose, upon a petition in bankruptcy being filed against it February 2, 1905, the court had jurisdiction under section 2 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3420]) notwithstanding the fact that for the greater part of the six months next preceding the filing of the petition it was not conducting the business for which it was incorporated, but only engaged in liquidation.

In Bankruptcy. On exceptions to report of W. L. Hill, referee, sur plea to the jurisdiction.

T. J. Davies, W. N. Leach, and R. W. Rymer, for petitioner.
C. A. Van Wormer, for respondent.

ARCHBALD, District Judge. The controversy here is one of jurisdiction. The respondent, a New Jersey corporation, denies by its plea that it has had its principal place of business within the district for the greater portion of six months preceding the institution of these proceedings, as averred in the petition, and as is essential; there being no claim of residence or domicile. Bankr. Act July 1, 1898, c. 541, § 2 (1), 30 Stat. 545 [U. S. Comp. St. 1901, p. 3420]. The evidence shows that while incorporated under the laws of New Jersey—and, in order to comply with them, having a nominal office at Camden in that state—the company was engaged in the business of manufacturing and selling condensed milk at La Plume and at Brooklyn, Pa., in this district, from the early part of 1903 up to October 6, 1904, when its plant at the latter place was destroyed by fire; that at the other having been sold the previous January. It also had during the same period a central office at Scranton, from which the management of the company was directed; the whole of its corporate business having been conducted in these three places. The fire, however, broke up what was left of its manufacturing business, which was not afterwards resumed. But it still retained its central office at Scranton, and from it, through its treasurer as its executive officer, with the assistance of a regularly employed stenographer, proceeded to settle up its affairs. An adjustment of the insurance was secured, amounting to some $14,000, a considerable portion of which was not paid until the latter part of November; the relics of the fire were disposed of; accounts aggregating about $5,000 were collected in, the money received from these several sources being deposited in a local bank; and sundry bills which were due were compromised and paid. The manager of the burned condensary was also retained until the middle of November, and a man put in charge of what was left of the property for some two months after that. This was the situation on February 2, 1905, when the present petition was filed; the debts due to the petitioning creditors having been incurred in the course of its condensing business.

There can be no question upon this showing as to the principal place of business of the company being within the district, not only for the greater part, but the whole, of the six months necessary to give jurisdiction. In re Marine Machine Co., 1 Am. Bankr. Rep. 421, 91 Fed. 630; In re Brice, 2 Am. Bankr. Rep. 197, 93 Fed. 942; In re

Elmira Steel Co., 5 Am. Bankr. Rep. 484; Dressel v. North State Lumber Co., 5 Am. Bankr. Rep. 744, 107 Fed. 255; In re Mackey, 6 Am. Bankr. Rep. 577, 110 Fed. 355; In re Magid-Hope Silk Co., 6 Am. Bankr. Rep. 610, 110 Fed. 352. The fact is that (not counting the nominal office at Camden, N. J.) not only the principal part, but substantially the whole, of its business was conducted here. It is contended, however, that after October 6th, the date of the fire, it was engaged in nothing but liquidation, which is not the doing of business within the meaning of the law, the business required to be done, either by a corporation or an individual, in order to give jurisdiction, being none other than that by which either is made liable to bankruptcy, and that, the respondent here having been out of such business for nearly four months of the six next preceding the filing of the petition, the court has no jurisdiction over it, and the proceedings cannot be maintained.

The question involved in this contention is not altogether a new one, although the particular form which it assumes here may be. "Fuit agrè," as it is said in Heylor v. Hall, Palmer, 325 (1619–1629), "ĝ ĝ un exercise traffique, ę Donque Debient indebted, a apres Desert son trade, ĝ liue in le pais sans ałsi trade, mes sur son tte, ę luy conceale de ses Creditors, uncose est Bankrupt quia bibe p son trade, qnt le Debt grow;" (It was agreed that if one engages in traffic and thereby becomes indebted, and afterwards abandons his trade and lives in the country without any trade, but upon his gains, and conceals it from his creditors, yet is he a bankrupt, because he lives by means of the trade out of which the debt grew). In line with this, in Meggott v. Mills, 12 Mod. 159, s. c. Ld. Raym. 286, a person exercising the trade of a victualer, in which he was liable to bankruptcy, contracted a debt, and subsequently quit the trade and became an innkeeper, after which he committed an act of bankruptcy, and it was held that, though a man quit his trade, he may be bankrupt for the debts that he owed before. And in Ex parte Bamford, 15 Vesey, 449, Lord Eldon declared that a commission in bankruptcy could be sustained beyond doubt by an act of bankruptcy committed after retiring from trade; the debts contracted during trade remaining unpaid. To the same effect are Dawe v. Holsworth, Peake, 64, Doe ex dem. v. Hayward, 2 Car. & Payne, 134, and Bailie v. Grant, 9 Bing. 121; it being stated in the latter case by Tindal, C. J., that the point was settled. It seems to have been carried one step further, or at least a new form given to it, in Ex parte Griffiths, 3 De G., M. & G. 174, where it was said by Knight Bruce, L. J.; "A trader, who, after having become indebted, leaves off trade, is not to be heard to say to his creditor that the trading has been left off, if a question arises whether the debtor can or cannot be, as a trader, made bankrupt." And Lord Alverstone, C. J., in Re Worsley, 1 K. B. (1901) 309, similarly declares that, so long as a debtor does not pay the debts which he contracted while engaged in trade, he is to be regarded as still so engaged. The doctrine of these cases was adopted and applied in this country, in Everett v. Derby, 5 Law Rep. 225, Fed. Cas. No. 4,576, a case arising under the bankruptcy act of 1841. It was there objected that the respondent was not liable

to bankruptcy, not being at the time of the alleged acts, nor at the time of the filing of the petition a merchant actually using the trade of merchandise, nor yet a retailer, so as to bring him within the law. But it was held by Judge Ware, on the authority of what was said by Lord Eldon in Ex parte Bamford, supra, that the proceedings should be sustained.

A case under the present act, more nearly approaching to the one in hand, is to be found in Re Luckhardt, 4 Am. Bankr. Rep. 307, 101 Fed. 807. The bankrupt there, who was engaged in the retail boot and shoe trade, abandoned it and went to farming; and, a petition having been filed against him, it was claimed that he was exempt. In holding him liable, however, it is said by Hook, J.:

"The exemption from involuntary proceedings in favor of wage earners and persons engaged chiefly in farming or the tillage of the soil is not intended as a means of escape for insolvents, whose property was acquired and whose debts were incurred in other occupations recently engaged in. If the right of the creditors to institute involuntary proceedings may be thus defeated by the debtors within the period allowed for the commencement of such proceedings, it could be defeated by a change of occupation made coincidently with the commission of an act of bankruptcy, and an insolvent debtor would thus be permitted to dispose of a stock of merchandise or other property, distribute the proceeds thereof in such manner as pleased him, immediately become for the time being a tiller of the soil, or a wage earner, * * * and so avoid the operation of the bankruptcy act. Such a result is not in accord with the purpose nor within the spirit of the law. A petition in an involuntary proceeding must be filed within four months after the commission of the act of bankruptcy relied on, and, if an insolvent, who is engaged in an occupation which is within the purview of the law, has committed an act rendering him amenable to its provisions, and desires within such period to adopt one of the callings favored by the law and exempted from its operation in respect of involuntary proceedings, he should not be permitted to carry with him the property previously accumulated, to the defrauding of pre-existing creditors. The excepted occupations are not designed as a refuge for insolvent debtors, laden with property and fleeing from other callings. The right of the creditors to proceed within the period limited after the commission of an act of bankruptcy cannot be thus defeated by the debtor."

Closely in point is In re White Mountain Paper Co., 11 Am. Bankr. Rep. 491, 127 Fed. 180, where a corporation, organized under the laws of New Jersey for the purpose of manufacturing pulp, acquired land and erected a plant in New Hampshire for the purpose of engaging in that business, but became involved before any direct manufacturing was done. In holding it liable to proceedings in bankruptcy, notwithstanding the latter circumstance, it is said by Aldrich, J.:

"The question * * * does not depend upon * * * whether the corporation was at the particular time of the petition actually engaged in * * * the process of manufacturing. My impression would be that the language 'engaged principally in manufacturing * * * pursuits' was used for the purpose of describing the kind of a corporation which may be put into bankruptcy, and that it was not intended that the operation of the bankrupt law upon a corporation of a kind within the meaning of the statute should depend upon the question whether it was actually engaged in manufacturing at the particular time when the petition is filed."

This case was affirmed on appeal (11 Am. Bankr. Rep. 633, 127 Fed. 643, 62 C. C. A. 369) upon the somewhat narrower ground that,

in the opinion of the court, manufacturing, under the evidence, had in fact begun, although only in its earlier stages—a view which, while it may not adopt, does not detract from, that expressed by the lower court. Finally, in Re Moench Co., 12 Am. Bankr. Rep. 240, 130 Fed. 685, 66 C. C. A. 37, where the corporation at the time of filing the petition was in the hands of receivers appointed by a state court, it was contended, similarly to what it is here, that the company, having ceased to do business when the receivers were appointed, was not within the provisions of the act. But it was said by Lacombe, J., speaking for the Court of Appeals of the Second Circuit:

"No case is cited in support of this proposition, and, in the absence of authority, we shall be unwilling to hold that a corporation could thus easily avoid the operation of the bankruptcy act by making a general assignment, or by securing the appointment of receivers, or by ceasing to do any business, before its creditors filed a petition against it."

While neither of the authorities so cited may be in exact correspondence with the case in hand, the principle to be deduced from them, applicable thereto, is clear. The liability of a person, whether natural or artificial, to bankruptcy is to be judged by the character of the pursuit in which such person was engaged at the time the debts due the petitioning creditors were incurred, with respect to which it may be conceded that, as to a corporation, its actual business is to be considered, and not that which it might possibly have undertaken by virtue of authorized but unexercised powers. In re New York & W. Water Co., 3 Am. Bankr. Rep. 508, 98 Fed. 711; In re Tontine Surety Co., 8 Am. Bankr. Rep. 421, 116 Fed. 401. As to such debts, an individual does not lose his previous character by ceasing to carry on the business in which they were contracted and turning to another, in which he is not liable to bankruptcy, and neither does a corporation, by stopping business altogether and going into liquidation, voluntary or involuntary. In either case, as to debts previously contracted, the business character of such person, in the contemplation of the law, remains the same. Wherever, therefore, the principal place of business of such person has been established for the greater part of six months preceding the filing of the petition, and without regard to the business there carried on, as to debts previously contracted, proceedings may be maintained.

This is not to deny the force of those cases which hold that, where a person ceases to belong to one of the excepted classes, he becomes liable according to the class in which he is found at the time proceedings are instituted. In re Matson, 10 Am. Bankr. Rep. 473, 123 Fed. 743; Hoffschlaeger v. Young Nap, 12 Am. Bankr. Rep. 521. It is simply that . different principle applies. Nor does it seem to make any difference that the debts due the petitioning creditors were incurred before the change (Butler v. Easto, Doug. 295), provided only the act of bankruptcy has been committed since. Bailie v. Grant, 9 Bing. 121. As declared in the latter case, "a debt contracted before trade, but remaining unpaid at and after the time the debtor enters into trade," is "a subsisting debt for every purpose, and subject to every consequence which belongs to a debt originally contracted dur-

ing trade." But without enlarging upon this, which is somewhat obiter, whatever be the rule where a change is made from an exempt to a nonexempt class, there can be no question as to what is the rule here.

The exceptions to the report of the referee are overruled, the issue raised by the plea is found in favor of the petitioners, and the respondent is directed to answer over within 10 days.