## In re BLOOMSBURG BREWING CO.

(District Court, M. D. Pennsylvania. August 19, 1909.)

No. 1,319, in Bankruptcy.

1. BANKRUPTCY (§ 72*)—CORPORATIONS SUBJECT TO ADJUDICATION—BREWERY—
   NATURE OF CORPORATE BUSINESS—MANUFACTURING—CORPORATION "EN-
   GAGED PRINCIPALLY IN MANUFACTURING."

   A brewing company, chartered to manufacture and sell malt liquors,
   which has done nothing except in preparation for such business, by con-
   structing a brewery plant at large expense, taking out a brewer's license,
   and hiring a brew master, although it has never made any beer, nor
   bought materials therefor, is a corporation engaged principally in manu-
   facturing, and subject to proceedings in involuntary bankruptcy, under
   Bankr. Act July 1, 1898, c. 541, § 4b, 30 Stat. 547 (U. S. Comp. St. 1901, p.
   3423).

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 17; Dec. Dig.
   § 72.*

   For other definitions, see Words and Phrases, vol. 8, pp. 7650–7651.]

2. BANKRUPTCY (§ 72*)—CORPORATIONS SUBJECT TO PROCEEDINGS—WHEN COR-
   PORATION ENGAGED IN BUSINESS FOR WHICH CHARTERED.

   A corporation chartered for a certain purpose is to be regarded in bank-
   ruptcy as engaged in the purpose of its charter from the time it starts to
   put itself in shape to pursue the objects for which it is incorporated, and
   takes character as a manufacturing or other corporation accordingly.

   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 72.*

   What persons are subject to bankruptcy law, see note to Mattoon Nat.
   Bank v. First Nat. Bank, 42 C. C. A. 4.]

In Bankruptcy. On exceptions to report of H. A. McKillip, referee.

W. H. Rhawn, for exceptions.

A. W. Duy, for petitioning creditors.

ARCHBALD, District Judge. The Bloomsburg Brewing Compa-
ny, the alleged bankrupt, was incorporated under the laws of Pennsyl-
vania on August 1, 1906, for the purpose, as expressed in its charter,
of "brewing, manufacturing, and selling malt liquors and malt ex-
tracts." To properly equip itself for this business it purchased about
100 acres of land in the borough of Bloomsburg, Pa., in this district,
and proceeded to erect thereon a brewery building, installing the nec-
essary brewing machinery and appliances, at a cost of about $100,000.
The money was principally raised by an authorized issue of first mort-
gage bonds of $150,000, only $90,000 of which, however, were market-
ed; the work and material above this which went into the brewery
being secured on credit, for which mechanics' liens to the amount of
$8,000 have been entered. There are also a number of tax liens which
have been filed against the property, and in addition some $1,500 is due
to general creditors. The company, it is admitted, is hopelessly in-
solvent, and has also committed an act of bankruptcy in preferring
certain of its officers and creditors, provided, always, that it is liable
to involuntary proceedings. It is denied, however, that this is the
case; the company not being engaged, as it is claimed, in any manu-
facturing pursuit, within the meaning of the bankruptcy act (Act July
1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]), at the
time of the filing of the petition.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The proceedings to have the company declared a bankrupt were instituted December 29, 1908, and there is no question that it had not at that time, nor has it since, engaged in the actual business of brewing; the nearest it has come to it, outside of the construction and equipment of the brewery, being to engage a brew master and to take out a brewer's license. This license was obtained on due application to the quarter sessions of Columbia county April 1, 1908, and was renewed again on April 1, 1909, after these proceedings were pending. And the brew master was retained upon wages until there was no more money to pay him, just how long is not shown by the record. As already stated, however, no manufacturing or selling of ale or beer was entered upon; the company not being in funds to pay for material, and its credit being gone by reason of its financial embarrassment.

By section 4 b of the bankruptcy act as amended, "any corporation engaged principally in manufacturing, trading, printing, publishing, mining, or mercantile pursuits, owing debts to the amount of one thousand dollars ($1,000) or over," may be adjudged an involuntary bankrupt; and the brewing of malt liquors, such as the respondent company was chartered to do, would, of course, be a manufacturing within the terms of the statute. It was held, however, in the case of the Toledo Cement Company (D. C.) 19 Am. Bankr. R. 117, 156 Fed. 83, that a corporation organized for the purpose of making cement, but which had never exercised its franchise and never engaged in actual manufacture, was not subject to adjudication. But, on the other hand, it was held in the case of the White Mountain Paper Company (D. C.) 11 Am. Bankr. R. 491, 127 Fed. 180, that a corporation organized for the purpose of manufacturing and selling paper from wood pulp, which had become the owner of large tracts of timber land, and had made extended expenditures in the prosecution of this purpose, was within the statute, even though there had been no actual manufacturing; it being declared that the words "engaged principally in manufacturing, trading, printing, publishing, mining or mercantile pursuits," as used in the bankruptcy act, were descriptive of the kind of the corporation that could be put into bankruptcy, and was not intended to make the operation of the law depend upon whether it was actually so engaged at the particular time when the petition was filed against it. This decision was affirmed on appeal in White Mountain Paper Company v. Morse, 11 Am. Bankr. R. 633, 127 Fed. 643, 62 C. C. A. 369, where it was held that, having acquired lands and constructed mills for the purpose of making paper, it had become engaged in that business. "The corporation is a business corporation," says Judge Putnam. "It undertook to acquire lands and construct mills for a certain purpose, and that purpose must be presumed to be one within the four corners of its organization. It had undertaken a business, and, in view of its charter and of what facts we have stated, that business could be no other than the business of manufacturing. It was not organized for the purpose of constructing mills, so that it could be said that its business was that of constructing mills. It was permitted to construct mills only as incidental to its authorized powers, which, so far as this case is concerned, were those of manufacturing. The question being purely a question of fact, and the case addressing itself on that question so strongly to the ordinary mind, * * * we are

bound to hold that, on any fair construction of the statute,   *   *   * the corporation was not only principally, but wholly, engaged in manufacturing, although in the early stages of it." It is true that in that case some timber had been cut into suitable lengths for use in the contemplated making of paper. But, while alluding to it, the decision, as it will be seen, does not rest on that, but must be taken as standing for the broad view that, where a corporation is organized and makes preparation for carrying out the objects of its charter, acquiring and equipping itself with the necessary plant and appliances, it thereby engages in that which it is incorporated to do—whether manufacturing, or mining, or whatever it may be—within the meaning of the bankruptcy act, and is liable accordingly.

This, in my judgment, is the correct interpretation of the law, and, if so, the proceedings were properly instituted. The respondent company was chartered to manufacture malt liquors, and at large cost it built and fitted up a brewery to do so. It even went so far as to take out a license and hire a brew master, although that is not very material. It may not have got together the necessary ingredients to begin to brew. But all that it did it did under the sanction and to carry out the purposes of its charter, which, while preliminary to the actual business of manufacturing and selling its products, not only stamped it as a manufacturing or brewing company, but as engaged in that pursuit from the moment that it started, under its charter, to put itself in shape to do so; every step taken necessarily having that in view. It is true that what a corporation is actually doing, and not simply what it is authorized to do by its charter, outside of that, is to determine whether it is engaged in any of the pursuits named in the statute. And where, therefore, it possesses a franchise by which it might be liable, it is not to be held if it does not use it. In re New York Water Company (D. C.) 3 Am. Bankr. R. 508, 98 Fed. 711; In re Tontine Surety Company (D. C.) 8 Am. Bankr. R. 421, 116 Fed. 401; Columbia Iron Works v. National Lead Company, 11 Am. Bankr. R. 340, 343, 127 Fed. 99, 62 C. C. A. 99, 64 L. R. A. 645. But that is altogether different; the franchise which it does, and not that which it does not, use giving character to its business. And that is all that was meant in Tiffany v. La Plume Milk Company (D. C.) 15 Am. Bankr. R. 413, 141 Fed. 444, decided by this court, where it was said that the actual business of a corporation is to be considered, and not that which it might possibly have undertaken by virtue of authorized, but unexercised, powers.

It is, however, said that bankruptcy is designed to protect commercial debts, incurred in trade, where credit is asked and received, and hence the requirement that a business within those enumerated by the statute must have been entered upon before liability attaches. But this, if of any force, is not controlling, and is met by the consideration that, as already stated, a manufacturing or trading corporation to all intents and purposes engages in business when it starts to carry out the objects for which it was incorporated. And if the incurring of debts upon credit is required to satisfy the statute, there certainly was enough of that here.

The exceptions are overruled, and an adjudication directed to be entered in conformity with the report of the master.