BOLLINGER et al. v. CENTRAL NAT. BANK et al.

In re DUQUESNE BREWING CO.

(Circuit Court of Appeals, Ninth Circuit. April 4, 1910.)

No. 1,786.

BANKRUPTCY (§ 72*) — CORPORATIONS SUBJECT TO ADJUDICATION—MANUFAC-
TURING CORPORATION—BREWERY—"MANUFACTURING PURSUITS."

A corporation, organized to build and equip a brewery and to manufac-
ture and sell beer, was engaged principally in manufacturing pursuits, and
subject to adjudication as a bankrupt, before its plant had been completed,
or any machinery purchased or installed, and before any beer had been
made.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 17; Dec.
Dig. § 72.*

For other definitions, see Words and Phrases, vol. 5, pp. 4346–4358.

What persons are subject to bankruptcy law, see note to Matoon Nat.
Bank v. First Nat. Bank, 42 C. C. A. 4.]

Appeal from the District Court of the United States for the South-
ern Division of the Southern District of California.

In the matter of the bankruptcy proceedings of the Duquesne Brew-
ing Company. On petition of the Central National Bank and others
to have the corporation declared a bankrupt, to which S. W. Bollinger
and another objected. From an order granting the petition, objectors
appeal. Affirmed.

Murphey & Poplin, for appellants.
Shankland & Chandler, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HANFORD,
District Judge.

GILBERT, Circuit Judge. The appellants assign as error that the
District Court adjudicated the Duquesne Brewing Company a bank-
rupt upon a finding of the referee that the company was, at the time
of incurring the debts due the petitioning creditors, a corporation en-
gaged principally in manufacturing pursuits. The contention is that
the brewing company was not at the time when the petition was filed
against it, and never had been, engaged in manufacturing, and that
therefore the court had no jurisdiction to adjudge it a bankrupt.

The facts are undisputed. The brewing company was incorporated
with power to manufacture and buy and sell beer, ale, and malt liquors.
To carry out the purposes of its incorporation, it purchased, at an ex-
pense of about $20,000, a site upon which to build a brewery. It en-
tered into a contract with the appellants to build the brewery, and to
equip the same with machinery for the contract price of $196,000.
Upon that contract it paid about $30,000. It incurred other debts of
$40,000. The buildings were only partially constructed, and no machin-
ery was installed or purchased. A one-story building connected with
the brewery was roofed over, the smoke-stack was started, the brewing
house was completed, as were also the engine room, the bottling house,
washhouse, rackhouse, and a part of the storeroom. A detached build-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

177 F.—39

ing, used for stable, office, and bottling house, was nearly completed. The ice plant and rackroom had the roof on. The main building, which was to be five stories, had been completed as far as three stories. The corporation hired a superintendent to see that the plant and machinery were made in accordance with the contract; but it did not at any time manufacture any beer, or anything else, nor purchase raw material for that purpose.

The sole question in the case is whether, under this state of the facts, the corporation was engaged in manufacturing. If we are to give to section 4b of the bankruptcy act (Act July 1, 1891, c. 541, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423]) a narrow construction, and hold that, in order to be engaged in a manufacturing pursuit, there must be the actual making of an article into a new form, or the fashioning of raw material into a finished product, for use, then the bankrupt in this case was not engaged in manufacturing, or in any manufacturing pursuit; for it had manufactured nothing, and had taken no actual step in the process of manufacturing, and it was, therefore, not subject to be adjudged an involuntary bankrupt. This was the view of the law taken in Re Toledo Portland Cement Co. (D. C.) 156 Fed. 83, in which it was held that a corporation organized for the purpose of making cement, which had not completed its plant, nor taken any step in the process of manufacturing, was not engaged in a manufacturing pursuit.

But, if the kind of corporation referred to in the act as amenable to bankruptcy is to be determined by the nature of the business of which it is in pursuit, and in which it has taken active steps to engage, and in the pursuit of which it has incurred debts and committed acts of bankruptcy, then the brewing company was engaged in manufacturing in the sense contemplated by the act. Such was the construction given the act in Re White Mountain Paper Company (D. C.) 127 Fed. 180, affirmed by the Circuit Court of Appeals for the First Circuit in White Mountain Paper Co. v. Morse, 127 Fed. 643, 62 C. C. A. 369, and in Re Bloomsburg Brewing Co. (D. C.) 172 Fed. 174, and such it seems to us is its reasonable construction.

It was the intention of Congress by the act to define the nature of the corporations that should be subject to bankruptcy proceedings, and its purpose is, we think, to include those corporations which are formed for the purpose of manufacturing, and which are pursuing the preliminary steps towards carrying out the purposes of their incorporation in preparing a plant and incurring liabilities with the actual intention of engaging in manufacturing, and that the operation of the law is not to depend upon whether or not the alleged bankrupt has, at the time when the petition is filed against him, actually proceeded so far as to become engaged in producing a manufactured product. In White Mountain Paper Co. v. Morse & Co., Judge Putnam said:

"Statutes of this general class are not construed in a literal or narrow way; but, like customs legislation, they are held as addressing themselves to the general purposes for which they were enacted."

If the corporation here under consideration was not engaged in manufacturing, in what was it engaged? Clearly it was not engaged in the

mere occupation of constructing a brewery. It does not follow that it was not engaged in manufacturing from the fact that it had not yet had time to accomplish all that it undertook to do. If it had already done a substantial part of that for the doing of which it was organized, it was occupied in the pursuit in which it aimed to engage. The construction contended for by the appellant would lead to the conclusion that a corporation which had been actually engaged in manufacturing a finished product, but had wholly ceased its business, and was engaged in winding up its affairs, could not be proceeded against in bankruptcy for an act of bankruptcy committed by it in the course of liquidation. But such is not the law. Tiffany v. La Plume Condensed Milk Co. (D. C.) 141 Fed. 444, and cases there cited.

The judgment is affirmed.