### ROBERTSON v. UNION POTTERIES CO.

(District Court, W. D. Pennsylvania. April 11, 1909.)

BANKRUPTCY (§ 72[*]) — INVOLUNTARY BANKRUPTCY — WHO MAY BE ADJUDGED BANKRUPT — MANUFACTURING AND TRADING CORPORATION.

Where a corporation is organized to manufacture and trade in crockery, and engages in the business, it is liable to be adjudged a bankrupt, though it has ceased to operate before the commencement of the proceedings, and before many of its obligations were incurred.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 17; Dec. Dig. § 72.[*]

What persons are subject to bankruptcy law, see note to Mattoon Nat. Bank v. First Nat. Bank, 42 C. C. A. 4.]

Proceeding by one Robertson against the Union Potteries Company. Heard on exceptions to the report and opinion of William R. Blair, referee in bankruptcy, acting as special master, on the petition for adjudication. Exceptions sustained.

Clarence Burleigh, O. S. Richardson, and Albert York Smith, for plaintiff.

Weil & Throp, for defendant.

ORR, District Judge. The main question in this case is whether or not the Union Potteries Company can be adjudged bankrupt. It is insisted upon by the petitioning creditors that it is a corporation engaged principally in manufacturing, trading, or mercantile pursuits. The charter of the corporation was granted by the state of New Jersey in 1901, and sets forth the object to be to manufacture, buy, sell, trade, and deal in any and every kind of crockery, etc., and "in furtherance, and not in limitation, of the general powers conferred by the laws of the state of New Jersey," it is expressly provided that the company should have many other powers. To go into details further with respect to the charter is unnecessary. The corporation had an office in Jersey City, solely for the purpose of complying with the laws of the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Dig. 1907 to date, & Rep'r Indexes

state of New Jersey. It had its principal office in the city of Pittsburg, in this district.

The evidence is that the corporation was engaged in the manufacture of pottery until early in the year 1904, at which time its factories' were destroyed by fire, and that subsequently it rebuilt for a new corporation the same potteries. How the title passed from the old corporation to the new one does not appear; but it does appear that in consideration of the rebuilding of the potteries for the new company, or for the transfer of the properties by the old to the new company, the old company received stock in quite a large amount in said new company. In order to comply with the laws of Pennsylvania, the Union Potteries Company filed a statement under its seal in the office of the Secretary of the Commonwealth of Pennsylvania under date of the 29th day of March, 1904, in which it stated:

"The object of said corporation or company is the manufacture and sale of pottery."

From that date down to 1908, long after the petition had been filed in this court, that declaration remained unchanged in the office of the Secretary of the Commonwealth. Because of the requirements of the Pennsylvania statute of April 22, 1874 (P. L. 108), it was a continuing declaration by the corporation of the purpose of its existence. I am of the opinion that because the said corporation was principally engaged in manufacturing, and because of the continuing declaration that manufacturing was its object, it cannot now defeat the petition in bankruptcy by alleging that it has ceased to be a manufacturing corporation.

In Re Moench & Sons Co., 12 Am. Bankr. Rep. 240, 130 Fed. 685, 66 C. C. A. 37, receivers of a corporation were appointed in March, 1903. In the following May a petition was presented to have the corporation adjudicated a bankrupt. This petition was resisted on the ground that the corporation had ceased to do business on the day the receivers were appointed. Judge Lacombe, for the appellate court, says:

"No case is cited in support of this proposition, and in the absence of authority we should be unwilling to hold that a corporation could thus easily avoid the operation of the bankruptcy act by making a general assignment, or by securing the appointment of receivers, or by ceasing to do any business before its creditors filed a petition against it."

Whether it is three months, as in the case just cited, or a longer period, in which the corporation ceased to carry on a manufacturing business, is immaterial, provided at one time it was chiefly engaged in manufacturing. Many of the cases cited in support of the report of the master are not applicable, for the reason that the corporation never had been at any stage in its history principally engaged in manufacturing, trading, or mercantile pursuits. This phase of the case is well considered in Tiffany v. La Plume Condensed Milk Co. (D. C.) 15 Am. Bankr. Rep. 413, 141 Fed. 444, on page 447, by Judge Archbald, as follows:

"Closely in point is In re White Mountain Paper Co. (D. C.) 11 Am. Bankr. Rep. 491, 127 Fed. 180, where a corporation, organized under the laws of New

Jersey, for the purpose of manufacturing pulp, acquired land and erected a plant in New Hampshire for the purpose of engaging in that business, but became involved before any direct manufacturing was done. In holding it liable to proceedings in bankruptcy, notwithstanding the latter circumstance, it is said by Aldrich, District Judge: 'The question * * * does not depend upon * * * whether the corporation was at the particular time of the petition actually engaged in * * * the process of manufacturing * * * pursuits was used for the purpose of describing the kind of a corporation which may be put into bankruptcy, and that it was not intended that the operation of the bankruptcy law upon a corporation of a kind within the meaning of the statute should depend upon the question whether it was actually engaged in manufacturing at the particular time when the petition was filed.' This case was affirmed on appeal (11 Am. Bankr. Rep. 633, 127 Fed. 643, 62 C. C. A. 369) upon the somewhat narrower ground that, in the opinion of the court, manufacturing, under the evidence, had in fact begun, although only in its earlier stages—a view which, while it may not adopt, does not detract from, that expressed by the lower court."

It is true that whether a corporation is within the act does not depend upon the authority given it by its charter, and if a corporation be authorized to engage in manufacture and never does so, or prepares to do so, it would not be within the statute; but the cases all seem to me to hold that, where the corporation has engaged chiefly in manufacturing, it may be proceeded against in bankruptcy, regardless of the period of time between its cessation of operation and the filing of the creditors' petition, and I am of the opinion that the claims of the petitioning creditors need not have arisen during the period in which the corporation was so engaged. In that I believe it differs from a natural person, whose activities may change at his will; whereas the activities of the corporation are and must necessarily be controlled by its charter.

I have not considered the exceptions to the referee's report in detail, for I have not thought it necessary to do so in view of the conclusions I have reached. So far as they immediately relate to the position I have herein outlined, they are sustained.