In re LUCKHARDT.

(District Court, D. Kansas. May 19, 1900.)

BANKRUPTCY—INVOLUNTARY—WHO MAY BE ADJUDGED.

> Although Bankr. Act, § 4b, excepts from the operation of the provisions as to involuntary bankruptcy a "person engaged chiefly in farming," a merchant who commits an act of bankruptcy may be adjudged bankrupt on a petition duly filed by his creditors within the statutory period thereafter, notwithstanding the fact that, after the act of bankruptcy charged, he abandoned the business in which he had been engaged, and became chiefly occupied in farming, and so continued to the filing of the petition.

In Bankruptcy. On petition for adjudication in involuntary bankruptcy.

Dobbs & Stoker and Rossington, Smith & Histed, for creditors.
Eugene Hagan and W. G. & G. T. Pendleton, for bankrupt.

HOOK, District Judge. This is a proceeding in involuntary bankruptcy, brought on January 9, 1900, by a number of mercantile firms

and corporations, creditors of the alleged bankrupt. It is set forth in the petition, among other things, that Luckhardt is insolvent, and that on, or about November 1, 1899, he conveyed, transferred, concealed, and removed a part of his property with intent to hinder, delay, and defraud his creditors, and that, while insolvent, he transferred a portion of his property to one or more of his creditors, with intent to prefer them over his other creditors. The alleged bankrupt has filed an answer, in which he does not deny the essential allegations in the petition, but sets up in bar to the relief prayed for by petitioners that from August 4, 1899, up to the filing of the petition he was, and is still, engaged chiefly in farming. Testimony has been taken on the part of the alleged bankrupt in support of his answer, and it is submitted to the court as upon a demurrer of the petitioning creditors to the evidence. It appears from the testimony that Luckhardt had been engaged in the retail boot and shoe business at Boonville, Mo., for about five years prior to March, 1899, and in that month he removed his stock of goods to North Topeka, Kan., and continued the same business there. In August, 1899, he determined to sell his stock, and quit the business, but he nevertheless continued the conduct thereof until the latter part of October, 1899. He continued to sell at retail in the usual and customary way, and to replenish his stock by purchases of new goods from time to time until the 26th of October, 1899. There was no apparent difference in the conduct of his business during the months of September and October from that of the previous period. The father-in-law of the alleged bankrupt died in April, 1899, seised of a farm in Missouri, consisting of 137 acres of land, which, upon his death, became the property of his widow, daughter, and two grandchildren, the offspring of a deceased son. The daughter is the wife of Luckhardt, the alleged bankrupt. About the 4th of August, 1899, Luckhardt and his family and his mother-in-law, who had come to Kansas, and lived with him, returned to Missouri, and went on the farm. He stayed there about a month, then returned to Topeka, where he remained a month. He then went back to the farm, and stayed a couple of weeks, and then returned to Topeka, where he remained until early in November. He then again returned to the farm, and has remained there ever since. During his absences from Kansas his boot and shoe business was left in charge of a clerk. On the 26th of October he sold his entire stock of merchandise, which invoiced $6,370 in bulk, for $2,870 in cash and 160 acres of land in Kansas, which was taken by him at $3,500. This land he sold to his wife, but it does not appear what he received for it. Luckhardt testified that the proceeds of the sale received by him were in part disposed of as follows: $628 was paid on a note held at Boonville, Mo., upon which his father, mother, and wife were sureties; $200 was paid to his brother upon a note held by the latter; $500 was paid to his mother, who lives in Oregon, Mo.; and from $60 to $75 was paid to a man in Topeka, Kan. None of his merchandise creditors were paid. During the cross-examination of Luckhardt, in which counsel for the petitioning creditors evidently desired to show an absence of good faith in the defense set up in the answer, he declined to testify as to what he did with the remainder of the money received by him, saying that he

could not answer without his books. Upon being requested to produce his books so that he could answer, his counsel objected to a postponement of the taking of the depositions to enable him to do so, and the notary sustained the objection. He also said that he could not even approximate the amount of his indebtedness, and that he could not tell how long it would take to figure it up. The farm of which his father-in-law died seised, and upon which he claims to be engaged in his farming operations, had been rented to a tenant for one-half of the crop raised thereon. Luckhardt did not know whether the term of the tenant had expired when he went on the farm on the 4th of August, 1899. He says he leased the farm from his mother and wife verbally, and that the terms of the arrangement were that he should give them one-half of the crop raised on the place. He immediately sublet to the former tenant all of the tillable land except a portion for oats, for half of the crop raised thereon. When he received the crop rent from the tenant, he was to turn it over to his wife and mother-in-law on account of the rent due from him to them. He retained for the use of his family and himself the house and about 35 acres of pasture and meadow land, and some of the cultivated land for oats. It is upon this situation and under these circumstances that the alleged bankrupt claims immunity from the proceeding against him.

The bankrupt act provides that "any natural person except a wage earner or a person chiefly engaged in farming or the tillage of the soil * * * may be adjudged an involuntary bankrupt," etc. Section 4b. The act is remedial in its nature and purposes, and is, therefore, not to receive a strict interpretation, but is rather to be construed reasonably, and with a view to effect its objects and to promote justice. The exemption from involuntary proceedings in favor of wage earners and persons engaged chiefly in farming or the tillage of the soil is not intended as a means of escape for insolvents whose property was acquired and whose debts were incurred in other occupations recently engaged in. If the right of the creditors to institute involuntary proceedings may be thus defeated by the debtors within the period allowed for the commencement of such proceedings, it could be defeated by a change of occupation made coincidently with the commission of an act of bankruptcy, and an insolvent debtor would thus be permitted to dispose of his stock of merchandise or other property, distribute the proceeds thereof in such manner as pleased him, immediately become for the time being a tiller of the soil, or a wage earner "at a rate of compensation not exceeding $1,500 per year," and so avoid the operation of the bankrupt act. Such a result is not in accord with the purpose nor within the spirit of the law. A petition in an involuntary proceeding must be filed within four months after the commission of the act of bankruptcy relied on, and if an insolvent, who is engaged in an occupation which is within the purview of the law, has committed an act rendering him amenable to its provisions, and desires within such period to adopt one of the callings favored by the law, and exempted from its operation in respect of involuntary proceedings, he should not be permitted to carry with him the property previously accumulated, to the defrauding of pre-existing creditors. The excepted occupations are not designed as a refuge for insolvent debtors laden

with property and fleeing from other callings. The right of the creditors to proceed within the period limited after the commission of an act of bankruptcy cannot be thus defeated by the debtor. This interpretation is in entire harmony with the spirit and object of the law, and is in accord with the plain principles of right and justice, and it prevents the perversion of provisions designed for the favor and protection of those who are in good faith wage earners or tillers of the soil. Let an order be entered adjudging the said William Luckhardt to be a bankrupt