## COUNTS v. COLUMBUS BUGGY CO. et al.

### (Circuit Court of Appeals, Fourth Circuit. November 4, 1913.)

### No. 1,164.

BANKRUPTCY (§ 91*)—PERSONS SUBJECT—"PERSON ENGAGED IN FARMING."
    Defendant cultivated about 630 acres of cotton, 50 acres in corn, 50 acres in oats, and 35 acres in peavine hay, operating 25 to 35 plows. He owned 350 acres of land which he cultivated, had invested in farming $40,-000, and visited his farm, during the preparation and cultivation of the crops three or four times a week and sometimes every day. He had a cotton gin on his place and produced on his farm an average of a half bale of cotton to an acre. In order to assist his son in business, he became his partner in the sale of buggies and wagons, but paid little or no attention to this and received no profits therefrom. He was also a partner of C. in buying and selling mules, but this occupied him only during the months of January and February, and in this business he contributed no capital and was not liable for any of its obligations, but received during two of the four years in which he so engaged $4,500 for his services. *Held*, that defendant was chiefly "engaged in farming" as a matter of law, and was not therefore subject to adjudication as an involuntary bankrupt.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 137–139; Dec. Dig. § 91.*]

Appeal from the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

Petition by the Columbus Buggy Company and others for an adjudication of bankruptcy against D. H. Counts and D. H. Counts, Jr., as copartners doing business as D. H. Counts & Son, and against D. H. Counts individually. From a decree adjudging D. H. Counts, individually, an involuntary bankrupt, he appeals. Reversed, with instructions to dismiss.

W. R. Richey, of Laurens, S. C. (F. B. Grier, of Greenwood, S. C., and Richey & Richey, of Laurens, S. C., on the brief), for appellant.

E. M. Blythe, of Greenville, S. C. (McCullough, Martin & Blythe, of Greenville, S. C., and John M. Cannon, of Laurens, S. C., on the brief), for appellees.

Before PRITCHARD, Circuit Judge, and CONNOR, District Judge.

PRITCHARD, Circuit Judge. Appellees as petitioning creditors, on the 2d day of March, 1912, filed their petition in the District Court of South Carolina, against D. H. Counts, and D. H. Counts, Jr., as copartners, doing business as D. H. Counts & Son, and against D. H. Counts individually, asking that the partnership be adjudged a bankrupt, and that D. H. Counts individually be also adjudged a bankrupt.

The petition, among other things, alleges: That D. H. Counts and D. H. Counts, Jr., and D. H. Counts, individually, were, at the times mentioned in the petition, principally engaged in the mercantile business at Laurens, S. C. The partnership is alleged to be insolvent, and

D. H. Counts, individually, is alleged to be insolvent. That the partnership of the said D. H. Counts, individually, had committed acts of bankruptcy by making certain preferential payments within four months of the date of the filing of the petition. The only act of bankruptcy alleged against D. H. Counts is the payment of a note given for the purchase price of certain fertilizer to be used, and which was used on his farm in Laurens county.

The partnership of D. H. Counts & Son filed an answer to the petition, putting in issue all of the material allegations thereof.

D. H. Counts, individually, filed a separate answer to the petition, putting in issue all of the material allegations of the petition, and in addition thereto by way of further answer alleged that he was then, and for years past had been, engaged chiefly in farming and tillage of the soil, and under the bankruptcy law immune from involuntary bankruptcy, and further that he was a wage-earner working for wages, salary, or hire, at a rate of compensation not exceeding $1,500 per year, and therefore immune from involuntary bankruptcy.

A jury trial was at first demanded on the issues raised by the pleadings, but afterwards, in order to expedite the hearing, the demand for a trial by jury was withdrawn and all questions referred by the court below to a referee, requiring that he take the testimony and report the same, together with his conclusions of law and fact, to the court.

The referee, after holding several references and taking the testimony offered, on the 15th day of May, 1912, filed a report, whereby he held that the petition should be dismissed both as to the partnership of D. H. Counts & Son and as to D. H. Counts, individually.

On petition for review, the court overruled the report of the referee and recommitted the case for further testimony.

The referee, after taking certain additional testimony under this order, made another report on October 26, 1912, wherein, among other things, he said:

"That D. H. Counts, individually, had not established his defense as being chiefly engaged in farming. That the testimony, however, showed beyond question that he was a large farmer, and that his operations as a farmer would stamp him as such anywhere in the South. That the testimony also showed that he was a partner in the mule business with a Mr. Cowan, and a partner in the business of D. H. Counts & Son, dealers in vehicles, and that it would be difficult to state whether he was involved more in farming than in these two other lines of business. That most of his time was given to farming."

These were the findings of fact, and as a matter of law the referee reached the conclusion that the defense had not been made out, and recommended that D. H. Counts be adjudged a bankrupt.

D. H. Counts, individually, filed a petition to review the report of the referee, and, upon considering the petition, the lower court affirmed the report of the referee, and entered a decree, adjudging D. H. Counts a bankrupt. The court further held that no act of bankruptcy was proven as against the firm of D. H. Counts & Son, and dismissed the petition as to them.

The appellant excepted to the decree adjudging him an involuntary bankrupt, and the case comes here on appeal.

It is insisted that appellant, at the time of the filing of the petition, was chiefly engaged in farming, and, as such, he is not subject to the provisions of the bankruptcy act.

The appellant, while on the witness stand, testified as follows as to the business in which he was engaged:

That for the past four or five years he had been chiefly engaged in farming. That he was engaged in the mule business with Mr. Cowan, who furnished the money with which to run the business, and that he got one-half the profits. That he incurred no liability at all in this business, and that he got nothing out of the mule business until the costs of running the same had been paid, and that Mr. Cowan was individually liable for the debts of the concern. That four years ago he received $3,000 for his services, and three years ago he received nothing. That the year before he got $1,500, and that last year he got nothing.

That he was engaged in the buggy business as a member of the firm of D. H. Counts & Son, but got no profits whatever from that business. That the business was run by his son, D. H. Counts, Jr., who received all the profits. That he had nothing to do with the management of the business, and that he was connected with this firm for about a year and a half.

That he had invested in farming about $40,000; cultivated about 630 acres of cotton, 50 acres in corn, 50 acres in oats, and 35 acres in peavine hay. That he employed about 34 mules, and for the last four years had been running from 25 to 35 plows. That he owned 350 acres of the land which he cultivated. That he visited his farm during the preparation and cultivation of the crop three or four times a week, and sometimes every day. That during the gathering and ginning season he would go three or four times a week. He had a gin on his place, which is run by a 50 H. P. engine. That he had a sufficient quantity of tools, etc., to run a 30 to 35 horse farm. That he gave to the mule business about two months in the year. That he produced on his farm an average of a bale of cotton to two acres, and that his average production was about 350 bales. That he had been engaged more or less in farming all his life.

The referee seemed to be of opinion that inasmuch as the appellant was a member of two firms he was not entitled to the immunity afforded one chiefly engaged in farming. This is clearly a misconception of the law. The real question involved herein is as to whether the appellant was chiefly engaged in farming.

In the case of American A. C. Co. v. Brinkley, 194 Fed. 411, 114 C. C. A. 373, this court, in discussing this phase of the question, said:

"There is only one question in the case: Was he at the time he committed the alleged act of bankruptcy chiefly engaged in farming? If he was not, it is admitted that an adjudication must be made. On this issue the court below decided in favor of the debtor. The creditors ask us to reverse that ruling.

"The debtor was carrying on three country stores. By himself, or in partnership with others, he tilled five farms. He was a member of four distinct partnerships. Each of these cultivated a separate farm. In the con-

duct of one farm he had no associate. There is no question that his mercantile business far exceeded in importance the agricultural operations conducted by him individually. This proceeding is against him as an individual. No one of the firms of which he was a member is a party to it. The creditors say that the so-called entity theory requires that, in determining whether the debtor was engaged chiefly in farming, we must exclude from consideration anything he did in connection with any of the partnerships. We cannot assent to this contention. Whether a debtor is or is not chiefly engaged in farming or tilling the soil is a question of fact, to be determined in each case in which it is sought to have him individually adjudicated. In passing upon that question, all the debtor's activities and pursuits must be considered as a whole. No part of them may be ignored merely because they concern themselves with the affairs of copartnerships of which he was a member. Doubtless a firm may be adjudicated an involuntary bankrupt when it is engaged in a nonexempt business, in spite of the fact that the principal occupation of some of its partners protects them from individual adjudication. Dickas v. Barnes, 140 Fed. 849, 72 C. C. A. 261, 5 L. R. A. (N. S.) 654."

The fact that he was engaged in other enterprises could in no wise affect his status under the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]) as a farmer, unless it should appear that he was chiefly engaged in business other than that of farming.

The evidence shows that appellant cultivated 630 acres of cotton, 50 acres of corn, 50 acres of oats, and 35 acres in peavine, and that he operated 25 to 35 plows. It further appears that he spent from three to four days of every week on his farm looking after the cultivation of the same. It also appears that he only spent about two months in the year in the mule business, to wit, the months of January and February. It further appears that at the time of the commission of the alleged act of bankruptcy appellant was not only chiefly engaged in farming, but, according to the evidence, was wholly engaged in farming. In determining this question, we must ascertain as to whether, at the time of the commission of the alleged act of bankruptcy, appellant was chiefly engaged in farming.

The petition avers that the alleged payments upon which it is based were made between November and December, 1911; the only direct testimony we have on this question being that of the appellant, and it is uncontradicted. The testimony shows that at that season of the year appellant was not engaged in the mule business as Cowan & Counts, and that he was only engaged in that business during the first part of the year, and also appears that for the year 1911 he received nothing for the services he rendered this firm, and no profits were received from the business of D. H. Counts & Son.

In the case of Flickinger v. First National Bank, 145 Fed. 162, 76 C. C. A. 132, it appears that the alleged bankrupt was actively engaged in the business of the Flickinger Wheel Company, a manufacturing corporation, employing a great number of men; that he was a stockholder, director, and president and general manager of that concern; that he also owned and cultivated a farm; that there was a house on his farm which was occupied by him and frequently by his family when he visited it for the purpose of giving directions for the cultivation and management of his farm; that he went there once or twice a week, and telephoned orders when he was otherwise

engaged; that he bought what was used on the farm and sold all of its products; that in January, 1904, the wheel company went into the hands of a receiver; on May 3, 1904, he made a general assignment for the benefit of his creditors; that the petition in bankruptcy was filed in September, 1904; that down to the time he made his assignment he made occasional visits to his farm, and gave directions regarding its management. The petitioner alleged that he had no business other than farming after the company went into the hands of a receiver, and that he had the sole and exclusive management of the farm. In that case, as in this instance, the statement of the alleged bankrupt was not contradicted. Judge Severens, of the Circuit Court of Appeals for the Sixth Circuit, said:

"It is difficult to see how, after he·made a general assignment on May 3, 1904, which, of course, conveyed his farm, he could properly be said to be chiefly engaged in farming. Four months passed before the petition in bankruptcy was filed. We think it could not be held that he was engaged in farming when the petition was filed. The farm was sold on July 17, 1904, by the assignee, who at that time was in control of it. We think the fair conclusion from the facts shown would be that prior to the time when the business of the wheel company went into the hands of the receiver (January, 1904) Flickinger was engaged in two kinds of business—manufacturing and farming—of which the former was the chief; that after that time he was not engaged in that business; and that farming became his chief, in fact his only, occupation, and continued such until his assignment in May, 1904.

"The decisive question would therefore seem to be whether section 4b refers to the time when an act of bankruptcy is committed for the purpose of determining the occupation, as some of the courts in bankruptcy have held, or to the time of filing the creditors' petition, which seems to be the natural meaning of the words employed. It was held in Re Luckhardt (D. C.) 101 Fed. 807, and In re Mackey (D. C.) 110 Fed. 355, that the time referred to by this exemption in the act is the time when the act was done which was the ground of the adjudication. This construction was adopted, because it was thought necessary in order to defeat attempts which bankrupts might make to escape the consequences of their acts by running under the shelter of an excepted occupation. If the language used is fairly susceptible of this interpretation, the argument from inconvenience would justify the proposed construction. * * * If the language used is fairly susceptible * * * of In re Pilger (D. C.) 118 Fed. 206, before Judge Seaman, who expressed doubt about it, but passed it by, holding that it was unnecessary to decide it in that case. In the case entitled In re Matson (D. C.) 123 Fed. 743, Judge Archbald, in deciding whether the respondent should be adjudged bankrupt, referred the question of occupation to the time when he was passing upon it; but we do not know whether the question was debated before him or not. Judge Brown, in construing the words in section 4b, which include certain corporations and exclude others from the operation of the law, said: 'These words must be interpreted in the sense in which they are commonly used and received, and not in any strained or unnatural sense, for the purpose of including or of excluding particular corporations.' In re N. Y. & W. Water Co. (D. C.) 98 Fed. 711, 713.

"A majority of the court is inclined to think that the statute should be regarded as having reference to the conditions existing at the time when the act of bankruptcy is committed. Upon this construction, the facts would require a finding that the respondent was within the exception."

In other words, it would not avail appellant to show that prior to the time of the commission of the alleged act of bankruptcy he was chiefly engaged in farming, nor would it avail him to show that subsequent to that date he was engaged in farming. The matter must

be determined solely as respects the time of the commission of the alleged act of bankruptcy. As we view the matter, the evidence in this case is overwhelming to the effect that the appellant, at the time of the commission of the alleged act of bankruptcy, was chiefly engaged in farming.

It not infrequently happens that a farmer who, after having educated his son, is under the impression that on account of the training he has acquired he is better equipped to engage in some kind of business than to work on the farm (which in many instances is a fatal mistake), and, in order to encourage his son, either furnishes him money or joins with him in a nominal way in order that he may have an opportunity to display his ability as a business man, and the latter is precisely what happened on this occasion.

The appellant testified, among other things as to the partnership:

"We run a buggy business as D. H. Counts & Son, but I do not get any profit from that.

"Q. How is that? A. It is run by D. H. Counts, Jr.

"Q. Who were to get the profits of that business? A. D. H. Counts, Jr.

"Q. What active part did you have to do with that business? A. Nothing to do with it one way or the other. He would ask my advice as to who to sell, and who not to sell.

"Q. Who did the buying? A. D. H. Counts, Jr.

"Q. He did the buying and selling and was to receive all profits, if any? A. Yes, sir.

"Q. How long have you been engaged in that business with D. H. Counts, Jr., running it? A. I don't remember exactly. Henry went away and came back, and when he came back we opened up the buggy business.

"Q. Was it some time prior to the first of last year, or about the first of last year? A. I rather think it was about the first of 1911. It has been about a year or a year and a half."

Thus it will be seen that the father was only a nominal member of the firm, and that he drew nothing from the same.

The referee, in referring to this phase of the question, said:

"It would be difficult from the testimony to state whether or not D. H. Counts was involved more in farming than in these other businesses. It is probable that most of his time is given to the pursuit of agricultural—certainly a great deal of it."

This makes it quite clear that there was no finding of fact upon the main question, to wit, as to whether the appellant was chiefly engaged in farming.

In the case of Dickas v. Barnes, 140 Fed. 849, 72 C. C. A. 261, 5 L. R. A. (N. S.) 654, the court adjudged a partnership a bankrupt, but at the same time refused to adjudge some of the partners bankrupts, owing to the fact that one of them was a wage-earner, and one was a tiller of soil. This case is cited in the case of American Agricultural Co. v. Brinkley, supra. In other words, the courts have held that one cannot be deprived of his legal exemptions by virtue of the fact that he may be a member of a firm engaged in a business that is not exempt. So, in this instance, the fact that the appellant was a member of the firm of D. H. Counts & Son, and also engaged in the other enterprises, could not deprive him of the exemption contained in the bankruptcy act for those who were chiefly engaged in

farming, provided, as in this instance, it should appear that the alleged bankrupt was chiefly engaged in farming.

In view of the evidence, we are impelled to the conclusion that at the time of the commission of the alleged act of bankruptcy appellant was chiefly engaged in farming, and, such being the case, we are of the opinion that the lower court was in error in adjudging appellant to be a bankrupt.

For the reasons stated, the decree of the lower court is reversed, with instructions to dismiss the petition upon which this proceeding is based.

Reversed.