VIRGINIA-CAROLINA CHEMICAL CO. et al. v. SHELHORSE et al.

(Circuit Court of Appeals, Fourth Circuit. November 10, 1915. Rehearing Denied December 21, 1915.)

No. 1374.

1. BANKRUPTCY ⬤⇒68—INVOLUNTARY PROCEEDINGS—PERSONS WHO MAY BE ADJUDGED BANKRUPTS.

Under Bankruptcy Act (July 1, 1898, c. 541, § 4b, 30 Stat. 547 (Comp. St. 1913, § 9588), providing that any natural person except a wage-earner or a person engaged chiefly in farming or the tillage of the soil may be adjudged an involuntary bankrupt, the question whether an insolvent is exempt depends upon his status as to occupation at the time the acts of bankruptcy were committed.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 18, 86, 87; Dec. Dig. ⬤⇒68.]

2. BANKRUPTCY ⬤⇒68—PERSONS WHO MAY BE ADJUDGED BANKRUPTS—OCCUPATION OR BUSINESS.

S. was the owner of a gristmill which was formerly a fairly up-to-date mill, but which was never profitable under S.'s management, and the business of which had dwindled to a comparatively small volume. S. was unable to meet his obligations, and was also embarrassed by a suit against him for a large amount which he was charged with converting, and in July, 1914, while such action was pending, he confessed judgment to practically all of his creditors except those subsequently filing an involuntary petition in bankruptcy, and also committed other acts of bankruptcy. On the hearing on the petition he claimed that he was a wage-earner and introduced a written contract of employment showing that the term of service thereunder was to begin August 1, 1914. He testified without corroboration that by verbal agreement he commenced work May 1st on the same terms, but it appeared that he was still proprietor of the mill which was operated in his name by his sons and a "representative," that the mill was running with considerable regularity, grinding such corn as customers brought, supplying S.'s family and making small sales, and the facts also indicated that he must have been more or less occupied with the proceedings in the suit mentioned, and in meeting his financial difficulties. *Held* that, while the burden of proving that he was not a wage-earner was on the petitioning creditors,

---

the facts sustained this burden and showed that he had not become a bona fide wage-earner when he committed the acts of bankruptcy charged.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 18, 86, 87; Dec. Dig. ☞68.]

3. BANKRUPTCY ☞68—PERSONS WHO MAY BE ADJUDGED BANKRUPTS—OCCUPATION OR BUSINESS—"WAGE-EARNER."

While under Bankruptcy Act, § 4b, a farmer is exempt from involuntary proceedings whatever his other interests, if farming is his chief occupation, a wage-earner is exempt only when he actually pursues the calling which that term prescribes, and a "wage-earner" is an employé, and this implies service for another which is substantially exclusive.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 18, 86, 87; Dec. Dig. ☞68.

For other definitions, see Words and Phrases, First and Second Series, Wage-Earner.]

Appeal from the District Court of the United States for the Western District of Virginia, at Danville; Henry Clay McDowell, Judge.

Petition in involuntary bankruptcy by the Virginia-Carolina Chemical Company and others, opposed by J. C. Shelhorse, the alleged bankrupt, and others. From a decree denying the petition, the petitioning creditors appeal. Reversed and remanded.

Louis M. Swink, of Winston-Salem, N. C., and J. Turner Clement, of Chatham, Va., for appellants.

R. I. Overbey and George T. Rison, both of Chatham, Va. (B. H. Custer, of Danville, Va., on the brief), for appellees.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

KNAPP, Circuit Judge. The court below held that Shelhorse could not be put into involuntary bankruptcy because he was a wage-earner, and the correctness of that ruling is challenged on this appeal.

[1, 2] We take it to be settled, at least in this circuit, that the question whether an insolvent is exempt, under section 4b of the Bankruptcy Act, depends upon his status as to occupation at the time the acts of bankruptcy were committed. Counts v. Columbus Buggy Co., 210 Fed. 748, 127 C. C. A. 298. It seems indisputable that up to May 1, 1914, if not later, Shelhorse had always been in the nonexempt class; and it was prior to that date that he acquired the property and incurred the debts involved in this proceeding. This property was mainly real estate, consisting of a house and lot in Chatham, Va., worth about $6,500, and a gristmill some three or four miles distant, known as the Eagle Roller Mills, of the estimated value of $8,000, or thereabouts. Shelhorse paid $3,500 for a half interest about eight years ago, when he bought out his partner and became the sole owner. It was then considered a fairly up-to-date mill, for both wheat and corn, though situated on a small stream which furnished operating power only part of the time. It is not now a modern or economical plant. Other mills better equipped and more accessible are serving the same community and absorbing most of the local custom. For these and other reasons the business has dwindled to a comparatively small vol-

time. It has never been profitable under Shelhorse's management, and of late years the losses have been large for a concern of that kind. In consequence the debts of Shelhorse increased and he became unable to meet his obligations. He was also embarrassed by a suit which the Virginia-Carolina Chemical Company was prosecuting against him for a large sum which he was charged with converting. This case was on trial before a master in the spring of 1914, and it was claimed, about the 1st of May of that year, that the evidence showed a liability approaching $10,000. This exceeded the sum for which the suit was originally brought, and on application for that purpose the court allowed amendment to cover an increased demand. The hearing then continued before the master, who later reported his findings and recommended judgment for upwards of $9,500, besides interest. In the meantime, on the 13th and 14th of July, Shelhorse confessed judgments to practically all his creditors, except the petitioners herein, and these judgments became liens upon his real estate. This confession of judgments, to say nothing of other things done by him about the same time, was undoubtedly an act of bankruptcy, if Shelhorse was then subject to adjudication; that is, if he was not exempt because he was a wage-earner. Within four months thereafter the petition in bankruptcy was filed. The formal allegation that he was not a wage-earner was denied by the answers of Shelhorse and the judgment creditors. The special master, to whom the matter was referred, and who took the testimony on the 19th of December, reported in favor of adjudication; but the District Court sustained exceptions to his report and dismissed the petition.

To support the contention that he was a wage-earner when the acts of bankruptcy were committed, Shelhorse called a member of the firm by which he was then employed, one Walton, who produced a written contract of employment and testified as follows:

"I am one of the proprietors of the Exchange Warehouse. My firm made a contract with J. C. Shelhorse to work for the warehouse on a salary of $1,200 a year. Mr. Shelhorse has no other employment, so far as I know."

But this contract, dated in January, showed on its face that the term of service provided for was to begin on the 1st of August, 1914. Later in the day, and after Walton had left town, as appears from the brief of appellee's counsel, Shelhorse testified that there was a subsequent verbal agreement under which he commenced work the 1st of May on the same terms and continued at work until the written contract took effect. There was no corroboration of his testimony as to this preliminary service, so to speak, and it is rather surprising that it was not mentioned by his employer. What Shelhorse himself says upon this point is confined to a brief and general statement. He did not tell when or with whom the verbal agreement was made, nor did he give any details as to where he had been at work or what he had done for the Exchange Warehouse during these three months. But giving due credence to his testimony in this regard, it must be taken in connection with other facts and circumstances which are undisputed. He was still the proprietor of the mill, however limited its business, and it was operated in his name. Early in May he

insured it as a going concern, though he says this was required by the bank to which the property was mortgaged. It was left in charge of his two sons and a colored man, whom he describes as his "representative." During the three months in question the mill appears to have been running with considerable regularity, grinding such corn as customers brought there for that purpose. It supplied the family of Shelhorse with some amount of mill products, and there were small sales of output from time to time. In short, there was a continuation of the business as previously conducted, though on a very small scale. Its returns had nearly reached the vanishing point, and Shelhorse had undoubtedly become aware that he must obtain a livelihood from some other source. As we see the matter, it was a period of transition from the pursuits of a manufacturer and trader, in which he had long been engaged, to the position of a salaried employé which he afterwards became. Moreover, he must have been occupied more or less during these months with the hearings and proceedings in the suit of the Virginia-Carolina Chemical Company, which he was defending, and in meeting the financial difficulties in which he was involved. It is a reasonable if not necessary inference from the record that the service performed by him for the Exchange Warehouse was not continuous or exclusive until some time after he committed the acts of bankruptcy charged in the petition.

Taking into account the facts to which we have referred, with other related circumstances, we are of opinion that Shelhorse had not acquired the status of a wage-earner, within the meaning of the Bankruptcy Act, when he confessed the judgments and did the other things which, if he was not then exempt, would constitute acts of bankruptcy. It is quite probable, and may be conceded, that his chief means of living after the 1st of May was the salary paid him by the Exchange Warehouse; but in our judgment this is not enough to show that when he confessed judgments to some of his creditors and paid others in full about the middle of July, he had effected a definite and settled change of occupation. To all outward appearance his activities at that time were much the same as they had been before, and those activities do not indicate that he had abandoned his previous pursuits and made himself a member of the wage-earning class. Strictly speaking, the burden of proof was upon the petitioners to show that Shelhorse was not a wage-earner when the acts of bankruptcy were committed; but this burden was sustained, as we think, by the presumptions arising from years of nonexempt occupation, from the apparent continuance of that occupation down to a later period, and from other facts and circumstances tending to identify him as a manufacturer and trader; and the probative force of this evidence was not overcome, in our opinion, by his unsupported testimony respecting his employment prior to the 1st of August. We are therefore constrained to hold that he had not become a bona fide wage-earner, such a wage-earner as is meant by section 4b, when he committed the acts of bankruptcy charged against him.

This conclusion is believed to be in accord with the weight of authority. Indeed, some decisions go to the extent of holding that the

question of exemption depends upon the status of the insolvent at the time his indebtedness to the petitioning creditors was incurred, and this view finds support in the standard text-books. In re Wakefield (D. C.) 182 Fed. 247; Tiffany v. La Plume Condensed Milk Co. (D. C.) 141 Fed. 444; In re Burgin (D. C.) 173 Fed. 726; In re Crenshaw (D. C.) 156 Fed. 638; Loveland on Bankruptcy (4th Ed.) vol. 1, 269, 270; Collier on Bankruptcy (10th Ed.) 128.

[3] The cases cited by the learned District Judge do not appear to be of contrary import. They all turn upon the question whether the insolvent was "engaged chiefly in farming," which seems to us quite a different proposition. A farmer is exempt from involuntary proceedings, whatever his other interests, if farming is his chief occupation; a wage-earner is exempt only when he actually pursues the calling which that term describes. The farmer works for himself; the wage-earner is an employé, and this implies service for another which is substantially exclusive. This characteristic difference between the two classes is clearly recognized in the language of section 4b. We think it decisive of this case, because we are convinced, after careful study of the record, that Shelhorse had not become a bona fide wage-earner when the acts of bankruptcy were committed, and is therefore not entitled to exemption. To sustain his plea, under the facts and circumstances shown in this case, would subvert the policy of the Bankruptcy Act and furnish a precedent for its easy evasion.

On the record here presented we hold that the petition should have been granted and Shelhorse adjudged a bankrupt. The decree appealed from is, accordingly, reversed, and the case remanded for further proceedings in accordance with this opinion.

Reversed.