## In re DOROSKI.

### (District Court, E. D. New York.   January 4, 1921.)

**Bankruptcy ⊂⇒68—Exemption of farmer relates to time of commission of alleged act of bankruptcy.**

Under Bankruptcy Act, § 46 (Comp. St. § 9588 [b]), an act committed by a person who was at the time engaged chiefly in farming cannot be charged as an act of bankruptcy and made the basis of involuntary proceedings.

In Bankruptcy.   In the matter of Adam Doroski (or Dureski), alleged bankrupt.   Involuntary petition dismissed.

Percy L. Housel, of Riverhead, N. Y., for petitioning creditors.

James T. Walsh, of Riverhead, N. Y., for alleged bankrupt.

Frank C. Barker, of Mattituck, N. Y., for Frank Kuleska.

Dudley Davis, of New York City, for McDermott Farm Supply & Produce Co.

CHATFIELD, District Judge.   An involuntary petition in bankruptcy was filed on December 3, 1920, against Adam Doroski, who had for about one year occupied a farm in Suffolk county, in this district, under a two-year lease.   During the year he had not only incurred debts and failed to pay the installment of rent, due October, 1920, but had mortgaged his implements and horses by a chattel mortgage to the McDermott Farm Supply & Produce Company, on August 18, 1920.   On October 11, 1920, he gave a bill of sale of all the property to his wife, and on November 23, 1920, left his farm and went to New York, where he testifies that he walked around until night came and then went to an hotel.   For some 9 or 10 days he spent his time during the day wandering around, and each night returned to the hotel, until December 5th, when he went back home and got in communication with his attorney.   In the meantime his wife had been selling the farm property for cash or disposing of it to alleged creditors in payment of their debts, and had advertised a sale at auction of the balance.

It may be suspected that Doroski was awaiting his wife, and that, when she was delayed in arriving with the proceeds of the property, he returned home just in time to interpose an answer and to attend the hearing in the bankruptcy proceedings.   The creditor who claims to have purchased the horses also appeared and answered the petition.   Both he and Doroski claim that Doroski was a farmer and principally engaged in the tillage of the soil, and therefore not subject to adjudication as an involuntary bankrupt.

Section 4a (Comp. St. § 9588), provides that:

"Any person who owes debts, except a corporation, shall be entitled to the benefits of this act as a voluntary bankrupt."

But subdivision (b) provides that:

"Any natural person, except a wage-earner or a person engaged chiefly in farming or the tillage of the soil, * * * may be adjudged an involuntary bankrupt."

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The intent of Congress to protect men engaged in agriculture, who might fall behind from the failure of crops for one or two seasons, has always been recognized as the basis for this provision in the statute. No question is raised in the present case as to the purpose of the law, but the facts compel a decision as to the time at which the status of the alleged bankrupt is to be determined.

A literal or direct reading of the section would lead to the conclusion that subdivision (b) spoke as of the time of adjudication, or as of the time when bankruptcy proceedings were instituted. But, as has been pointed out in many cases, either of these interpretations would allow a fraudulent bankrupt to escape by committing acts of bankruptcy and then changing his occupation, so as to put himself in the exempt class. This could not be allowed. Tiffany v. La Plume Condensed Milk Co. (D. C.) 141 Fed. 444 (citing cases from the English law and from the earlier United States statutes); In re C. Moench & Sons Co., 130 Fed. 685, 66 C. C. A. 37; In re Burgin (D. C.) 173 Fed. 726; In re Luckhardt (D. C.) 101 Fed. 807.

Those persons only may be adjudged bankrupts who, while insolvent, have committed acts of bankruptcy. In re Folkstad (D. C.) 199 Fed. 363. By analogy, the performance of those acts which in another person would be acts of bankruptcy may not be considered as such if performed by one exempt from adjudication. From this the converse of the preceding proposition has been held, viz. that a person in the exempt class, who commits acts of bankruptcy, cannot be thrown into bankruptcy because he has perforce ceased the occupation which gave him the exemption. Flickinger v. First Nat. Bank, 145 Fed. 162, 76 C. C. A. 132.

Indeed, it has been held in one case that a former bank cashier, absconding, could not be thrown into involuntary bankruptcy, because, among other activities, he had spent the most of his time prior to his flight in conducting a farm property. Harris v. Tapp (D. C.) 235 Fed. 918. But in all of these cases it has been held that the time from which the status of exemption was to be determined must be either the date of commission of an act of bankruptcy (In re Mackey [D. C.] 110 Fed. 355; In re Leland [D. C.] 185 Fed. 830; In re Disney [D. C.] 219 Fed. 294; Virginia-Carolina Chemical Co. v. Shelhorse, 228 Fed. 493, 143 C. C. A. 75), or the date at which the debts to which the act of bankruptcy relate were incurred (In re Crenshaw [D. C.] 156 Fed. 638; In re Burgin, supra).

In the case at bar the alleged bankrupt may have temporarily given up, due to his failures in the conduct of his farm and to recrimination by his wife. But all his debts had accrued and the alleged acts of bankruptcy had been committed prior to his disappearance, and while he certainly should be classed as a farmer and engaged in the tillage of the soil. But, more than this, it would appear that, no matter what his purpose may have been, he left his farm in the hands of an agent.

Under the circumstances, his bill of sale to his wife was little more than a power of attorney. The farm was being closed up and the assets turned into cash, either in fraud of his creditors and for his own benefit, or in fraud of his creditors for the benefit of his wife,

with his connivance. If, therefore, he would not be subject to involuntary bankruptcy, even if he had engaged in some other line of business, it must certainly be held that he could not be thrown into bankruptcy while a fugitive, or during the temporary cessation of his activities and before the expiration of the four-months period within which his exemption, based upon these particular acts of bankruptcy, would continue.

Immediately after the expiration of the four months, the same individual might be adjudicated a bankrupt for acts of bankruptcy committed while insolvent and after he had ceased the occupation of farming. In that proceeding the debts accruing during his farming operations might be proven in competition with debts accruing thereafter. A man like the alleged bankrupt in this case may have intended to defraud his creditors or to create preferences; but, so long as he continues to be a farmer, punishment cannot be meted out, nor his affairs administered, under the bankruptcy statute.

It is no objection to an apparently correct interpretation of an act of Congress to suggest that it does not include all possible cases where the operation of a similar statute might be useful. If two constructions were possible, one of which would prevent fraud and the other would allow a fraudulent debtor to escape, the one preventing the fraud would necessarily be chosen. But where one interpretation will cause difficulties in many cases, and the opposite interpretation will cause difficulty in few cases, including the one at bar, the words of the statute cannot be strained or distorted merely to fit the circumstances of this particular case.

It must be held that the alleged bankrupt was a farmer at the time the acts of bankruptcy were committed, and apparently was still a farmer, or at least had not taken up any other occupation, at the time the petition was filed. The court, therefore, had no jurisdiction in bankruptcy, and the petition must be dismissed.