**FLORIDA NAT. BANK et al. v. EVANS.**

District Court, M. D. Georgia. July 31, 1928.

Harris, Harris & Popper and Martin, Martin & Snow, all of Macon, Ga., for creditors.

C. L. Shepard, of Ft. Valley, Ga., and Ellis & Glawson and Smith & Smith, all of Macon, Ga., for bankrupt.

DEAVER, District Judge (after stating the facts as above). The question in this case is whether the defendant is exempt from bankruptcy because engaged chiefly in farming or tillage of the soil. The evidence taken and reported by the master consists of two volumes, containing 661 typewritten pages of oral testimony, besides the documentary evidence. The foregoing statement of facts is only a bare outline of the testimony. It is believed, however, to be sufficient to show that the whole case turns upon a single question of law. That question is whether a natural person, who operates a farm for a corporation, is engaged in farming within the meaning of the Bankruptcy Act. In operating 3,000 acres of individual farms, Evans was engaged in farming; also to the extent of his one-half interest in the farming partnerships, he was engaged in farming within the meaning of the Bankruptcy Act (11 USCA). They farmed 9,000 acres. In that connection, therefore, the extent of his farming was the same as if he had been individually engaged in farming 4,500 acres.

Evans operated several nonfarming corporations, with the double purpose that they should carry on a general business for profit

with all their customers, except the Evans individual, partnership, and corporation farms, and that they should aid those farms by marketing their products without profit and by furnishing them supplies at cost. To the extent that he caused these corporations to aid the individual farms, and to one-half the extent that he caused them to aid the partnership farms, he was engaged in farming.

If defendant's activities which are clearly farming are placed on one side, and his activities which are clearly nonfarming on the other, neither can be said to constitute his chief occupation, without reference to his connection with the 10 farming corporations which operated farms containing 18,000 acres. If, in working for the farming corporations, he was himself engaged in farming, then that farming and his other farming hereinbefore referred to constituted together his chief occupation. On the other hand, if, in working for the farming corporations, he was not himself engaged in farming within the meaning of the Bankruptcy Act, then such work and his other nonfarming activities constituted together his chief occupation, and he was not engaged chiefly in farming.

In this view of the case the opinion evidence given by several witnesses, that Evans was engaged chiefly in farming, is not important, because in forming their opinions they considered the farming of 18,000 acres by corporations, and the marketing business done by the marketing agency, a corporation, as constituting a part of the farming operations of Evans as an individual.

It is not necessary in this case to determine whether "farming" and "tillage of the soil" are synonymous, or whether the latter applies to any natural person engaged chiefly in doing manual labor on a farm in any capacity, whether as owner, overseer, tenant, cropper, or wage hand. Evans was not engaged chiefly or otherwise in that kind of work. Whatever may be the meaning of "tillage of the soil," "farming" includes more than manual farm labor, and the provision in the Bankruptcy Act exempting natural persons engaged chiefly in farming is not limited to persons engaged in such work. Neither is it limited to small farmers or to large farmers. A man may own or rent a small farm and do the work himself, or he may own or rent thousands of acres and operate through overseers and wage hands, without doing any manual labor himself, and in either case he is engaged in farming. So far as the character of the work is concerned, one's farming activity may be physical or mental or financial, just so long as it is work done in operating a farm. It is all farm work. However, whether one is engaged in farming is not determined solely by the kind of work he does. He may be engaged exclusively in doing farm work, and yet not be engaged in farming at all, within the meaning of section 4b of the Bankruptcy Act (11 USCA § 22(b). If he is engaged chiefly in the work of operating a farm, then his exemption depends upon his relation to the business of operating that farm. He must be so related to the farming as to be directly affected by its success or failure. "The intent of Congress to protect men engaged in agriculture, who might fall behind from the failure of crops for one or two seasons, has always been recognized as the basis for this provision in the statute." In re Doroski (D. C.) 271 F. 8, 9.

Section 4b must be given a reasonable construction. A man may be employed at a salary of $5,000 a year to manage a shoe store. He is not directly concerned with the gains or losses of the store. In any event he draws a salary of $5,000. Or the same man may be employed at a salary of $5,000 a year to manage a farm. He is not directly concerned with the gains or losses of the farm. Failure of crops does not affect him. In any event he draws a salary of $5,000. There is no logical reason for protecting him from bankruptcy in the latter position, and not in the former. Congress intended to protect the man who relates himself to the business of farming in such a way that the outcome of the business will directly affect his financial well-being. "The farmer works for himself." Virginia-Carolina Chemical Co. v. Shelhorse (C. C. A.) 228 F. 493, 497.

As is said in Hart-Parr Co. v. Barkley (C. C. A.) 231 F. 913, 915, the threshing of his own grain by a farmer is farming, but threshing grain for others for hire is not farming. In the case of In re Brown (D. C.) 284 F. 899, the defendant owned about 4,000 acres, which was farmed by tenants. The tenants furnished all teams, tools, implements, labor, and one-half of the theshing expenses and feed. The tenants marketed the produce and divided the proceeds of sale equally with the defendant. Defendant consulted and advised with the tenants as to crops to be planted and as to rotation of crops. Defendant did not share losses, nor was his moiety at all contingent upon the making of actual profits. Defendant spent by far the larger part of his time in looking after the tenants. The court said:

"The nature of his activities, so far as

the looking after his farms is concerned, does not constitute him a farmer, but merely makes him an investor in farm lands. He had nothing to do with actually tilling the soil. If his tenant was compelled to expend, in teams, labor, tools, and implements, far more than the whole crop · produced was worth, nevertheless, Brown took one-half of what was raised on the farm, subject only to a deduction of one-half of the feed and other negligible expenses. He, in effect, took produce as rent, instead of cash, and he was not farming, but only held large investments in farm lands, to which, as one interested would naturally, do, he gave much of his attention."

In that case, while the defendant had his money invested in the land and spent most of his time looking after the tenants, yet he did not subject himself to the hazard of farming. He so related himself to the farming that he could not lose and might profit. To come within section 4b the debtor must be so situated as to be affected directly by the result of the farming operations. He must be engaged chiefly in farming on his own account, and not simply doing farm work for another, who takes all the responsibilities and sustains all the losses.

The 10 farming corporations were engaged in farming. Evans owned stock, but he was not by reason of that fact engaged in farming. He worked for the corporations for either a salary or dividends. He says he was paid salary in lieu of dividends. He was not liable for the debts of the corporations. They lost money, but paid his salary notwithstanding. He was not affected by their farming business. By incorporating the 10 farms, the marketing agency, the nursery, the cannery, etc., he could escape all responsibilities. If the corporations failed, and were thrown into bankruptcy, he could say they are separate entities, and disclaim individual liability, and prevent his own property from being administered. But when he fails, in order to escape bankruptcy, he says, all these corporations are just other names for himself, and in fact the farming business is all his. Thus he would operate 10 farming corporations and other corporations, and escape bankruptcy, whether he fails or they fail.

Evans, in working for the 10 farming corporations, was not himself engaged in farming. In causing the marketing agency, the nursery, the cannery, the insurance agency, etc., to aid the farming corporations, he was not himself engaged in farming. It follows that he was not engaged chiefly in farming or the tillage of the soil.

An order will be entered accordingly.