## In re INMAN.
### No. 1520.

District Court, D. Wyoming.
Feb. 17, 1932.

Frank England, of Colorado Springs, Colo., and William B. Cobb, of Casper, Wyo., for petitioning creditors.

Hagens & Wehrli, of Casper, Wyo., for alleged bankrupt.

KENNEDY, District Judge.

This is an involuntary suit in bankruptcy begun by a single creditor, the National Surety Company of New York, seeking to have Inman declared a bankrupt. The substance of the petition in this respect is that the petitioner is a creditor of Inman, and entitled under the Bankruptcy Act (11 USCA) to file a petition; that Inman has less than twelve creditors; that he owes debts to the amount of $1,000 and over; that he is neither a wage-earner nor a person engaged principally in farming or tillage of the soil; that petitioner has a judgment recovered against the alleged bankrupt in March, 1929, in excess of the sum of $1,900, no part of which has been paid; and that on the 15th of July, 1931, the alleged bankrupt, while insolvent, committed an act of bankruptcy, in that on said date he did transfer and assign to one Gantz a certain judgment recovered in favor of the alleged bankrupt and against the City of Cheyenne, Wyo., in the sum of $25,000, said assignment and transfer being made with the intent to prefer such assignee as creditor over the other creditors of the alleged bankrupt. The suit was instituted on November 5, 1931. An answer was filed by the alleged bankrupt on November 25, 1931, in which issue was joined; many allegations of the petition being admitted. One of the allegations of the answer is that on the 15th day of July, 1931, and for several months prior thereto, the number of creditors of the bankrupt was in excess of twelve and of the number of about twenty, which condition at the time of the filing of the answer still existed. An issue was also made in regard to the occupation of the alleged bankrupt, in that said answer sets forth that on the 15th day of July, 1931, and for several years prior thereto, the alleged bankrupt was and still is a wage-worker, working for a salary or hire at a rate not exceeding $1,500 per year. It is further alleged that on the said 15th day of July, 1931, and for a considerable time prior and also subsequent thereto and up to the filing of said answer, the alleged bankrupt was a person engaged chiefly in farming or tillage of the soil. The answer prays for a dismissal of the involuntary petition.

On December 24, 1931, the Denver Sewer Pipe & Clay Company, by appropriate order, intervened as a petitioning creditor with a claim in the form of a judgment exceeding the sum of $3,000.

When the case was assigned for trial, this was the situation which then existed and over which a controversy arose as to the sufficiency of the number of creditors to sustain the petition in the light of the disclosure of the answer, that the creditors of the bankrupt exceeded twelve in number. An adjournment of the court was then taken until the next morning without the determination of

the point, at which time another creditor, the Campbell & Johnson Company, with a claim of $32, petitioned for leave to intervene.

The objection of the alleged bankrupt to proceeding in the case under the situation that then existed was not waived, but the court proceeded to hear the matter upon all the issues raised, and evidence was thereupon taken and arguments of counsel heard.

■ It is apparent that the additional creditor, making a number sufficient to sustain the adjudication, should be permitted to intervene.

Title 11, USCA § 95, subdivision d (original Bankruptcy Act, § 59), provides: "If it be averred in the petition that the creditors of the bankrupt are less than twelve in number, and less than three creditors have joined as petitioners therein, and the answer avers the existence of a larger number of creditors, there shall be filed with the answer a list under oath of all the creditors, with their addresses, and thereupon the court shall cause all such creditors to be notified of the pendency of such petition and shall delay the hearing upon such petition for a reasonable time, to the end that parties in interest shall have an opportunity to be heard; if upon such hearing it shall appear that a sufficient number have joined in such petition, or if prior to or during such hearing a sufficient number shall join therein, the case may be proceeded with, but otherwise it shall be dismissed."

By this it appears that the alleged bankrupt did not comply with the provisions of the Bankruptcy Act in filing his answer by setting forth a list under oath of all his creditors, with their addresses, and therefore is in no position to take advantage of a situation created by him of the petitioning creditors not being advised as to the names and addresses of his other creditors, but also the act provides that if, prior to or during such hearing, a sufficient number of creditors shall join, the case may be proceeded with. The court was therefore evidently correct in proceeding with the hearing when the last creditor had petitioned to intervene.

■ The other point in the case revolves around the determination of the occupation of the alleged bankrupt; it having been admitted in open court by the alleged bankrupt that at the time he made the assignment of judgment on July 15, 1931, which is set forth as the claimed act of bankruptcy, he was insolvent.

From the evidence and admitted facts the following situation developed, so far as the questions here to be determined are concerned: Inman was formerly a contractor, and, while engaged in fulfilling a contract in building a system of sewers in the city of Cheyenne, he went broke. The claims of the National Surety Company and the Denver Sewer Pipe & Clay Company, petitioning creditors herein, grew out of Inman's contractual relations with the city of Cheyenne, and likewise the judgment recovered in his favor, the assignment of which is alleged as an act of bankruptcy, arose out of the same contract. The testimony shows that, after the completion of the Cheyenne sewer contract, in which Inman lost a large sum of money and was then owing Gantz, the one to whom the judgment was subsequently assigned did no more contracting work after the spring of 1925. He worked at various things, principally as a carpenter, which was originally his trade, by the day for a wage in and around Casper and at other places. For a time he worked on the ranch of Gantz for wages which were applied upon his debt. He went back to Iowa and built or repaired a garage upon property which he owned there, in which respect he worked for himself. He had employment at day wages on one or more highway contracts where he was engaged as a carpenter at the building of bridges at a daily wage. In the spring of 1931 Inman and his wife moved in with Inman's brother on a farm or ranch northwest of Riverton, Wyo., where he did general work around such ranch or farm for his brother, but during said season he and his brother leased a certain acreage and put in a crop of beans which the alleged bankrupt assisted to plant and cultivate, but which crop was harvested during the time that Inman was engaged in working as a carpenter for daily wages on highway contracts. The return from his work as a carpenter and his farming enterprise during all the time since his contracting ventures ended amounted to considerably less than $1,000 per year.

With this picture in view it might be difficult, if important, to determine whether or not Inman was a wage-earner or engaged in the tillage of the soil during the year 1931, but, as both are occupations exempt from involuntary proceedings in bankruptcy, it becomes a question of little consequence. The facts, however, would seem to justify the conclusion that from 1925, up until the hearing of this case, the principal occupation of Inman was that of one working for wages, as the proof tends to show that from this

source he derived the greater portion of his income.

This conclusion suggests the more important and controversial question in this case. This question is as to the time when the occupation of the alleged bankrupt must be determined with respect to an alleged act of bankruptcy. An investigation of this point leads to the conclusion that there are two lines of authorities. One line suggests the thought that, where there has been a change to an occupation which is excepted from the proceedings in involuntary bankruptcy and the debts and claims upon which the proceeding originates grow out of a nonexcepted occupational class, the occupation of the alleged bankrupt should be considered and determined as of the date when the claims arose.

The reasoning in this line of authorities is fairly set forth in the case of In re Burgin (D. C.) 173 F. 726, where at pages 727 and 728 the court says:

"The controlling legal question is whether one concededly engaged in mercantile pursuits, and not chiefly in farming, during the period when the debts scheduled were contracted, and the assets scheduled acquired or owned, is exempt from adjudication, by reason of a change of occupation thereafter to one of the exempt pursuits. Subdivision 'b' of section 4 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423 [11 USCA § 22 (b)]), provides that:

" 'Any natural person, except a wage earner, or a person engaged chiefly in farming or the tillage of the soil, * * * may be adjudged an involuntary bankrupt.'

"The act itself does not otherwise specify the time when the status of the bankrupt is to be determined. Some of the District Courts have construed it to refer to the time of the commission of the act of bankruptcy, rather than of the filing of the petition, going upon the idea that the law should not be so construed as to permit the bankrupt, by a change of occupation between the commission of the act of bankruptcy and the filing of the petition, to defeat the operation of the law. The same reasoning would seem to demand a construction of the law that would prevent the bankrupt from incurring debts and acquiring assets in a nonexempt occupation, and then by ceasing to do business in such occupation, and engaging in an exempt occupation, and thereafter committing an act of bankruptcy, to defeat the operation of the law. This construction would require that the status of the bankrupt in this respect be determined as of the period during which he was engaged in the business in which he contracted the debts and acquired or owned the assets subject to administration."

Some of the other authorities tending to support this theory are In re Crenshaw (D. C.) 156 F. 638; In re Wakefield (D. C.) 182 F. 247; Tiffany v. La Plume Condensed Milk Co. (D. C.) 141 F. 444; In re Mackey (D. C.) 110 F. 355.

The other line of authority is to the effect that the occupation of the alleged bankrupt must be determined as of the date of the alleged act of bankruptcy. In this respect the thought is set forth in the opinion of Judge Bourquin of the United States District Court of Montana in the case of In re Folkstad, 199 F. 363, where at page 364 he uses the following language:

"The law of bankruptcy is what Congress has made it, and not what expediency and convenience might desire it. The statute is clear and unambiguous. It declares that certain persons, having committed an 'act of bankruptcy,' may on petition filed within four months thereafter be adjudged involuntary bankrupts. It expressly excepts persons engaged chiefly in farming or tillage. The effect is that these excepted persons cannot commit an 'act of bankruptcy.' An act is an 'act of bankruptcy' for the reason that he who commits it can because thereof be adjudicated an involuntary bankrupt.

"It is an 'act of bankruptcy' when the act is committed, or not at all. If the act is committed by one who then is not of the class that the law says may be adjudicated an involuntary bankrupt, it is not an 'act of bankruptcy,' and furnishes no foundation for involuntary proceedings.

"No former occupation can make the act of an exempt person an 'act of bankruptcy.' No subsequent change of occupation can deprive the act of a nonexempt person of its quality as an 'act of bankruptcy.' The act takes color only from the bona fide occupation of the actor at the time it is committed, and not from his occupation prior or subsequent thereto. Otherwise, a farmer of ten years' standing might be adjudicated an involuntary bankrupt because of debts incurred prior thereto in the vocation of merchant. By analogy, in reference to the time when insolvency is material, see West Co. v. Lea, 174 U. S. 598, 19 S. Ct. 836, 43 L. Ed. 1098.

"One who incurs debts in a nonexempt occupation, changes to an exempt occupation, and thereafter commits an act that in a

nonexempt occupation would be an 'act of bankruptcy,' is not subject to adjudication of involuntary bankruptcy because thereof, and of such debts still existing, or at all."

Some of the other authorities taking this view are Virginia-Carolina Chemical Co. v. Shelhorse (C. C. A.) 228 F. 493; In re Disney (D. C.) 219 F. 294; In re Beiseker & Martin (D. C.) 277 F. 1010; Smith v. Brownsville State Bank (C. C. A.) 15 F. (2d) 792; In re Macklem (D. C.) 22 F. (2d) 426; Flickinger v. First National Bank, 145 F. 162 (C. C. A. 6).

In the Flickinger Case, being a decision of the Circuit Court of Appeals, it is interesting to note the controversial nature of the point as it was considered in that case. This is indicated by the language of the opinion at page 165 of 145 F., as follows:

"The decisive question would therefore seem to be whether section 4b refers to the time when an act of bankruptcy is committed for the purpose of determining the occupation, as some of the courts in bankruptcy have held, or to the time of filing the creditors' petition, which seems to be the natural meaning of the words employed. It was held In re Luckhardt (D. C.) 101 F. 807, and In re Mackey (D. C.) 110 F. 355, that the time referred to by this exception in the act is the time when the act was done which was the ground of the adjudication. This construction was adopted, because it was thought necessary in order to defeat attempts which bankrupts might make to escape the consequences of their acts by running under the shelter of an excepted occupation. If the language used is fairly susceptible of this interpretation, the argument from inconvenience would justify the proposed construction. This question was presented in the case of In re Pilger (D. C.) 118 F. 206, before Judge Seaman, who expressed doubt about it, but passed it by, holding that it was unnecessary to decide it in that case. In the case entitled In re Matson (D. C.) 123 F. 743, Judge Archbald, in deciding whether the respondent should be adjudged bankrupt, referred the question of occupation to the time when he was passing upon it; but we do not know whether the question was debated before him or not. Judge Brown, in construing the words in section 4b, which include certain corporations and exclude others from the operation of the law, said:

" 'These words must be interpreted in the sense in which they are commonly used and received, and not in any strained or unnatural sense, for the purpose of including or of excluding particular corporations.'

"In re N. Y. & W. Water Co. (D. C.) 98 F. 711, 713.

"A majority of the court is inclined to think that the statute should be regarded as having reference to the conditions existing at the time when the act of bankruptcy is committed. Upon this construction, the facts would require a finding that the respondent was within the exception."

It appears that in that case an attempt was made to present it to the Supreme Court of the United States through certiorari which was denied in 203 U. S. 595, 27 S. Ct. 783, 51 L. Ed. 332. So that it would seem that we have an inferential suggestion that the rule adopted by the last line of cases has at least persuasive support through the refusal of the Supreme Court to consider the matter.

Other cases in the books might be described as border cases, where, for example, an act of bankruptcy is committed and shortly thereafter a change of occupation made, under which circumstances a court might fairly conclude that the change had been made for the purpose of defeating the natural right of creditors in preventing a preference to one of their number, and in such a situation a court might fairly determine that a change of occupation had been taken for fraudulent purposes and decline to recognize the new occupation of the alleged bankrupt as determining the rights of the creditors of the bankrupt. Such, however, is not the situation in the case at bar, as the evidence fairly shows that the alleged bankrupt was engaged as a wage-earner and at times in tillage of the soil, both of which are in the excepted class, for a period of six years before the alleged act of bankruptcy was committed, which surely can carry with it no intimation of fraudulent intent on the part of the alleged bankrupt. It is suggested that, on account of the judgment which was the subject of the assignment purporting to be the act of bankruptcy growing out of the operations of the bankrupt as a contractor, out of which also the claims of the petitioning creditors arose, an equitable situation arises which should require a different determination of the occupation of Inman. I cannot see that the situation here can be so regarded any more than if the property coming into the hands of the alleged bankrupt while he was engaged in an excepted occupation were from an independent source. Furthermore, if equitable considerations are to be indulged, the court might fairly consider that the as-

signee of the judgment is the man who backed Inman as a contractor to the extent of many thousands of dollars.

All things considered, it would appear that, in the absence of transactions which savor of fraudulent design, the law should be settled as to the time when the occupation of an alleged bankrupt must be determined where an alleged act of bankruptcy is involved. In this respect I consider that the better line of authorities sustain the rule that this determination of occupation is to be made as of the date of the alleged act of bankruptcy, which rule the Supreme Court has at least inferentially accepted.

For the reasons stated, the adjudication of bankruptcy will be denied, the petition of the creditors dismissed at their cost, and a decree may be entered accordingly, reserving proper exceptions.